Argued January 8, reversed and remanded May 16, petition for
rehearing allowed August 6, argued on rehearing September 11,
former opinion withdrawn; affirmed September 26, 1974

HOLLAND, *Appellant, v.* SISTERS OF SAINT
JOSEPH OF PEACE, *Defendant,* SEELEY ET AL,
*Respondents.*
522 P2d 208
526 P2d 577

*Richard H. Williams,* Portland, argued the cause for appellant. With him on the briefs were Robert E. Maloney, Jr., and Dezendorf, Spears, Lubersky & Campbell, Portland.

*Richard Bryson,* Eugene, argued the cause for respondents. With him on the brief were Bryson and Robert, and Calkins and Calkins, Eugene.

HOWELL, J.

This is a malpractice case against defendant Sacred Heart General Hospital and the defendant doctors

who are doing business as a partnership specializing in radiology. The trial court granted an involuntary nonsuit in favor of the hospital, and the jury returned a verdict in favor of the defendant doctors. The plaintiff's appeal only as to the defendant doctors is based on alleged errors in the court's instructions.

The plaintiff suffered from cancer of the cervix and was treated by the defendant doctors, McMahan and Wilken. The diagnosis showed a large cancerous tumor affecting the vaginal area and the uterus. Dr. McMahan decided to treat plaintiff with radiation because he believed that alternative methods of treatment, such as surgery or chemotherapy, would be inappropriate in plaintiff's case. He did so treat her, using a cobalt treatment and placing radium capsules in her body for a period of time. Thereafter severe complications arose. Plaintiff went to the University of Oregon Medical Center where her condition was diagnosed and treated by a Dr. Benson, who discovered that she had an intestinal obstruction of both the large and small bowel and that the vault of the vagina, around the cervix, was scarred and very hard. Dr. Benson testified that plaintiff's condition was caused by excessive irradiation received by the plaintiff when she was being treated for the cancer.

Dr. Benson treated the plaintiff by performing a permanent colostomy.

The plaintiff contends that the doses of radiation were excessive and that the defendants should have used smaller doses of radiation over a longer period of time. Plaintiff argues that she was not informed of the dangers to healthy organs which could result from excessive radiation, and if she had been so

informed she would have chosen the alternative treatment of lesser doses over a longer period of time.

The duty of a physician to inform his patient of the risks involved in a certain type of treatment and the availability of feasible alternatives was discussed by this court in *Getchell v. Mansfield*, 260 Or 174, 489 P2d 953 (1971). We stated the following regarding the physician's duty:

> "* * * A correct test would be to require the disclosure of all the 'material' risks, results that might well occur, not dangers that are extremely remote; risks that are of serious consequences, not unexpected results that are of little consequence." 260 Or at 180.

We also stated when medical testimony has been introduced showing that the risk is material, that alternatives are feasible, and that disclosure of the risk will not be detrimental to the patient, the duty to warn and advise of alternatives is not based upon the custom of physicians in the locality.

> "* * * The duty to warn and to advise of alternatives does not arise from and is not limited by the custom of physicians in the locality. Rather, it exists as a matter of law if (1) the risk of injury inherent in the treatment is material; (2) there are feasible alternative courses available; and (3) the plaintiff can be advised of the risks and alternatives without detriment to his well-being. If there is evidence tending to prove all these elements, the plaintiff is entitled to have his case submitted to the jury under proper instructions. * * *" 260 Or at 183.

■ The plaintiff contends that the trial court erred in giving the following instruction:

> "I instruct you it's a question for you to determine whether Doctor McMahan explained those

risks and advised of those feasible alternative courses of treatment *which a reasonably prudent and skillful physician specializing in radiology would have explained* under the same or similar circumstances." (Emphasis supplied.)

Under our decision in *Getchell* the instruction was erroneous because the duty to inform follows as a matter of law and does not depend upon what a "reasonably prudent and skillful physician" would have explained under the circumstances.

■ The more serious question is whether the error is properly before us. The plaintiff's exception to the instruction did not point out the error. However, the plaintiff did request an instruction which correctly stated the law by providing that the physician must advise the patient of all material risks and of feasible alternatives, and that the failure to do so will render the physician liable.[1]

*Crow v. Junior Bootshops,* 241 Or 135, 404 P2d 789 (1965), involved a similar situation where the court gave an erroneous instruction and the plaintiff failed

---

[1] The requested instruction was as follows:

"A. Before a physician administers treatment, he must secure the consent of his patient. In order for the patient's consent to treatment to be valid, the physician must do the following:

"(1) Advise the patient of all material risks of injury inherent in the treatment that is intended.

"(2) Advise the patient whether there are feasible alternative courses of treatment available; by this I mean both other forms of treatment different than the type intended, and other methods of rendering the same type of treatment intended though with less risk of complications.

"Failure of the physician to obtain consent from the patient by discussing with the patient the matters that I have just explained to you renders the physician liable in damages for any injury proximately resulting from the treatment.

"B. In other words, a patient has a right to make an informed choice as to the type and amount of treatment to be rendered."

to except. However, the defendant did request a proper instruction which the court failed to give. Failure to give the instruction was assigned as error on the appeal. We held that the error was properly preserved.

In the instant case the plaintiff has also assigned as error the failure to give her requested instruction. The defendants argue, however, that we cannot consider the assignment because plaintiff's notice of appeal did not set forth as error the court's failure to give her requested instruction. The notice did assign as error the giving of the instruction on informed consent which we hold was error for the reasons previously mentioned.

Our statute ORS 19.029 (1)(e) provides that the notice of appeal must contain:

> "(e) A plain and concise statement of the points on which the appellant intends to rely. On appeal, the appellant may rely on no other points than those set forth in such statement. If the appellant has designated for inclusion in the record all the testimony and all the instructions given and requested, no statement of points is necessary." (Amended by Ch 207, § 5, Oregon Laws 1973.)

In *Gowans v. N. W. Pac. Indemnity Co.*, 260 Or 618, 489 P2d 947, 491 P2d 1178 (1971), we stated that the purpose of then ORS 19.072 (2)(b), now ORS 19.029 (1)(e), was:

> "* * * to advise the respondent at an early date of the appellant's position on appeal so that the respondent can determine whether or not the record containing less than the entire testimony is an adequate record for the purpose of decision of the appeal." 260 Or at 628.

In the instant case the plaintiff designated only the testimony of three witnesses, the instructions given

by the court, the instructions requested by the plaintiff, and all exceptions by plaintiff to instructions given. However, the defendants then cross-designated the remainder of the transcript and all exhibits received during the trial.

Thus, the entire record was designated in this case, and the defendants therefore were not prejudiced by the plaintiff's method of statement of points on appeal. The error is properly before us and requires that the action be reversed.

As this case must be remanded for a new trial, it is necessary that we discuss further the instruction which the court gave on informed consent. That instruction reads:

"I instruct you that a patient's consent to treatment by a physician must be informed consent. A patient must be advised of all material risks and all feasible alternative courses of treatment.

"It's not necessary that a physician tell a patient all the possible risks and damages of the proposed procedures, but the physician must disclose all material risks which are of serious consequences and results that might reasonably be expected to occur.

"A physician is privileged to withhold information on specific risks when disclosure would be detrimental to his patient's well-being.

"I instruct you it's a question for you to determine whether Doctor McMahan explained those risks and advised of those feasible alternative courses of treatment which a reasonably prudent and skillful physician specializing in radiology would have explained under the same or similar circumstances."

As previously mentioned, in *Getchell* we stated that the physician must inform the patient of "all the

'material' risks, results that might well occur, not dangers that are extremely remote; risks that are of serious consequences, not unexpected results that are of little consequence."

In other words, in *Getchell* we were referring to a situation where the doctor must disclose results that may well occur and which are of serious consequence; he need not inform the patient where the results are extremely remote and of little consequence. *Getchell* did not consider a case where the results are remote but of serious consequences, which could have been the situation under the facts in the instant case.

Unquestionably, the results of the radiation treatment were very serious to the plaintiff. There was medical testimony that a portion of the small bowel was stuck to the colon and a hole had formed in the intestine; part of the area was so stiff and fibriotic it would not hold a suture; the vaginal area was scarred and woody; and because of the condition of her intestines it was necessary to perform a colostomy. There was also evidence that plaintiff's condition was the result of excessive radiation treatment and that the proper treatment would have been a lesser dosage over a longer period of time.

The defendant Dr. McMahan, who gave plaintiff the radiation treatment, stated that he told plaintiff the tissues of the bladder and rectum could be damaged. He stated, "I told her these things were possible, but I felt it was not probable they would be serious." He admitted that there were other methods of treatment than the one he used and that protracting the treatment was a way of reducing the likelihood of radiation complications. However, it was his position that the treatment he administered was the proper

treatment and "there was no true alternative * * * as I outlined it." He admitted that plaintiff's organs received more radiation "than they could tolerate," and that he did not advise her of the greater likelihood of complications from a high dosage.

We therefore have a situation where the results were serious but the treating doctor believed that the likelihood of the plaintiff being injured to the extent shown was only a possibility.

In *Getchell* we pointed out that the materiality of the risk is "the keystone of the physician's duty to disclose." 260 Or 174 at 181, citing 64 Nw U L Rev 638 (1969). The authors of that article, Waltz & Scheuneman, *Informed Consent to Therapy,* in discussing the materiality of the risk, endorse the following test, with which we agree:

> "A risk is thus material when a reasonable person, in what the physician knows or should know to be the patient's position, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to undergo the proposed therapy." 64 Nw U L Rev at 640.

The factors which determine the significance of the risk or risks are the incidence of the injury from a certain treatment and the degree of harm which might be involved. A very small chance of serious harm may well be significant to the patient. *Canterbury v. Spence,* 150 US App DC 263, 464 F2d 772 (1972). Thus, the jury should consider, when determining whether a risk is or is not material, the likelihood of any injury and its seriousness. If a serious injury might occur from a given method of treatment, the physician must inform the patient of all but extremely remote risks. However, if the potential injury is slight, then the patient

need be informed of only those risks which might well occur. *Wilkinson v. Vesey,* 110 RI 606, 295 A2d 676, 689 (1972); *Canterbury v. Spence,* supra at 787-88; *Cobbs v. Grant,* 8 Cal 3d 229, 104 Cal Rptr 505, 502 P2d 1, 11 (1972).

The plaintiff's other assignment of error is without merit.

Reversed and remanded.

HOLMAN, J., dissenting.

The majority opinion reverses the case for the failure to give a proper instruction upon the right of the plaintiff to have alternative methods of treatment explained to her by the defendants so that she could make a choice. This assumes that there was evidence of feasible alternative methods recognized by the medical profession as proper treatment for plaintiff's particular situation.

There is no substantial dispute as to what the evidence shows. The defendants' testimony was to the effect that the treatment which was given of two large doses of radium a week apart was the only proper treatment for plaintiff. The plaintiff's testimony, on the other hand, was to the effect that the only proper treatment for plaintiff was two smaller amounts of radium two weeks apart. There was no evidence by anyone that both methods of treatment were proper for plaintiff.

I diverge from the balance of the court on what I see as a question of logic. The majority sees the jury as being able to find that *both* methods were proper and, therefore, there was a basis upon which to give the jury an instruction on feasible alternative methods of treatment. I see the jury as being able to find that

*one or the other* was proper and, therefore, there was no basis for finding that both were proper. The choice for the jury, as I see it, was whether the plaintiff's or the defendants' expert medical testimony was correct, and the jury made the choice in favor of defendants' testimony.

Before a physician should be required to explain alternative methods of treatment, there should be testimony that the medical profession objectively recognizes feasible alternative methods of treatment for the patient's particular condition. There was no such testimony in this case.

Because I believe plaintiff was not entitled to an instruction on alternative methods of treatment, I would affirm. Plaintiff could not have been prejudiced by the faulty instruction.

**PETITION FOR REHEARING**

*Richard H. Williams,* Portland, argued the cause for appellant on rehearing. With him on the brief were Robert E. Maloney, Jr., and Dezendorf, Spears, Lubersky & Campbell, Portland.

*Richard Bryson,* Eugene, argued the cause for respondents on rehearing. With him on the briefs were Bryson and Robert, Eugene, and Calkins and Calkins, Eugene.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and SLOPER, Justices.

HOWELL, J.

The defendants have filed a petition for rehearing contending, *inter alia,* that we erred in our decision that *Crow v. Junior Bootshops,* 241 Or 135, 404 P2d 789 (1965), applied to the facts in the instant case. We granted the petition for rehearing.

In our original opinion we held that the trial court erred in instructing the jury that the duty of a physician to inform the patient of the risks involved and the alternatives available was to be tested by what

a reasonably prudent and skillful physician, specializing in radiology, would have explained to the patient. *Getchell v. Mansfield,* 260 Or 174, 489 P2d 953 (1971).

However, the plaintiff failed to except to the erroneous instruction. In her reply brief the plaintiff relied on *Crow v. Junior Bootshops,* supra, to support her position that the error was properly preserved although no exception was taken to the erroneous instruction. In their petition for rehearing, defendants argue that *Crow* is distinguishable from the instant case.

In *Crow* the trial judge gave an instruction to the effect that contributory negligence was not a bar to plaintiff's recovery but could be considered only in mitigation of damages. The instruction was clearly erroneous because at that time contributory negligence was a bar to recovery. No exception was taken, but defendant did request an instruction which properly stated the law that contributory negligence was a bar. On appeal defendant assigned as error the failure of the trial court to give the requested instruction, and we held that the error was properly preserved by the requested instruction.

The defendants claim, and we now agree, that the instant case is distinguishable from *Crow*. In *Crow* the effect of the requested instruction was to call the trial court's attention to the fact that the instruction given was erroneous and that contributory negligence was a defense to plaintiff's cause of action. In the instant case there was nothing in the requested instruction which clearly and directly called to the attention of the trial court that it was error to advise the jury that the physician's duty depended upon what a reasonably prudent physician would inform the patient.

The rule requiring an exception to an instruction as the means of preserving error is a salutary one, as the trial court by the exception is given the opportunity of correcting the alleged error and so advising the jury. The conclusion of the court in *Crow* that the error was properly preserved by a requested instruction instead of an exception to the instruction given should not be further extended, and we have decided that it should not be applied in the instant case. Because the plaintiff failed to except to the court's instruction we now conclude that the error is not properly before us and therefore the judgment must be affirmed.

Former opinion withdrawn.

Affirmed.

McALLISTER, J., concurring.

I concur in the result of the majority opinion, but believe we should not temporize with our opinion in *Crow v. Junior Bootshops,* 241 Or 135, 404 P2d 789 (1965), but recognize that it was improperly decided and overrule it. Our long-standing rule requiring a specific exception to an instruction given to the jury should be preserved intact. A rule requiring a trial judge to scrutinize each requested instruction and to treat each one as a potential exception to the instructions given will place an intolerable burden on the trial judges. It will permit counsel to conceal potential exceptions in a sheaf of requested instructions instead of requiring him to inform the court directly, precisely and openly of his objections to the instructions which have been given in his case.

SLOPER, J., concurs in this opinion.