693 P.2d 443

Dennis R. ULERY and Carol M. Ulery, husband and wife, Plaintiffs-Respondents,

v.

James E. ROUTH and Dareline I. Routh, husband and wife, Defendants-Appellants.

No. 14972.

Supreme Court of Idaho.

Dec. 10, 1984.

---

William A. Stellmon, Lewiston, for defendants-appellants.

Dale O. Cox, Orofino, for plaintiffs-respondents.

BAKES, Justice.

By this opinion we reverse the summary judgment granted to the sellers of real estate. We conclude that a material issue of fact existed as to whether the seller expressly waived strict compliance with the thirty-day requirement to cure default. The case is remanded for further proceedings.

The Rouths, buyers, entered into an escrow contract to purchase real estate from the Ulerys, sellers. The escrowholder was Idaho First National Bank, Orofino Branch. The contract required monthly payments and also stated that "time is of the essence." The contract also required the sellers to send a notice of default for past due payments to the buyers, who would then have a thirty-day period in which to cure the default. A prerequisite to curing the default was the payment of a $50 fee within the same thirty-day period to cover the cost of preparation and service of the default notice. Upon the buyers' failure to cure a default, the contract provided the sellers with alternative remedies of accelerating the debt or declaring forfeiture and re-entering the property.

The escrowholder's ledger shows that a previous notice of default was not cured until thirty-three days after the notice of default issued by the sellers. No objection was made to the late cure. Many of the payments, both before and after the previous default and cure, were accepted late. However, on February 24, 1982, sellers sent a second notice of default which clearly stated their intention to rely on strict performance of contract and exercise their default remedies under the contract unless two outstanding payments and the $50 default fee were remitted within the thirty days.

After receiving the default notice, buyers made the past due payments, without the $50 default fee, to the escrowholder on March 25, 1982, which was within the thirty-day period. The next day, which was the twenty-ninth day of the default period, a bank escrow officer contacted Mr. Routh by telephone and informed him that the $50 default fee must also be paid to cure the default. Mr. Routh told the escrow officer that he was going to sell his cattle the next day, Saturday, and asked if the $50 payment could be made on Monday, March 29th. The escrow officer replied that the Ulerys would have to consent and asked if Mr. Routh would prefer that she contact the Ulerys. Mr. Routh replied, "Yes, that would be best." Mr. Routh's affidavit states that later in the day the bank officer called back "and said that Mrs. Ulery had told her it would be okay so long as the payment were made on Monday." The affidavit of Mrs. Ulery states that she told the bank officer that the $50 payment would *not* be acceptable on Monday. The affidavit of the bank officer also states that Mrs. Ulery said the Monday payment was not acceptable, and further that the refusal was told to Mr. Routh by telephone. The $50 default fee was in fact tendered and paid to the escrowholder on Monday, March 29, 1982, more than thirty days after notice of default. The Ulerys rejected the cure as untimely and subsequently sent notice and demand for the entire balance of

the contract to be paid pursuant to the acceleration clause in the contract.

Sellers filed a complaint against buyers demanding judgment for the entire unpaid balance remaining on the contract and also demanding the sale of the property with the proceeds to be applied against the unpaid balance. The buyers' answer defended on the grounds that the thirty-day default period had been waived and also that the remedy claimed by the Ulerys was an unjust and unconscionable penalty to the Rouths. The trial court granted summary judgment to the sellers, ruling that even if it is assumed that the bank officer told Mr. Routh that the Monday payment was acceptable the escrow officer in this case was the agent of Mr. Routh for the purpose of soliciting information from Mrs. Ulery, and that the Ulerys could not be held responsible for a misstatement of the escrow agent. The Rouths have appealed.

It is "fundamental that a party may waive a provision in a contract made exclusive for [the party's] benefit." *Schmidt v. Village of Kimberly*, 74 Idaho 48, 59–60, 256 P.2d 515, 521 (1953). Mr. Routh's affidavit, stating that he was told that Mrs. Ulery would accept the default fee on Monday, supports the inference that sellers expressly waived the thirty-day time limit. This fact was placed at issue by the affidavits of the bank employee, Mrs. Ulery and Mr. Routh, as the trial court correctly acknowledged.

However, the trial court concluded as a matter of law that the escrow officer, in inquiring of Mrs. Ulery whether or not the payment of the $50 late fee on the next Monday was acceptable, and relaying that information to Mr. Routh, was acting as agent for the buyers Rouths, not the seller Mrs. Ulery, and that therefore Ulerys would not be bound by the statement. Viewing the record most favorably to the Rouths who were the non-moving parties, as we must in reviewing this summary judgment motion, we are of the opinion that a factual question existed on the issue of whether the escrow officer was acting as agent for the Rouths or for the Ulerys.

The Ulerys had instigated the default proceeding pursuant to the escrow agreement. The escrowholder was delivering the notice of default to the Rouths on behalf of the Ulerys. The escrowholder was directed to accept the late payments for the Ulerys pursuant to the notice of default. When the Rouths responded to the notice of default by making the monthly payments which were in arrears, but failed to make the $50 notice of default payment, the escrow officer contacted the Rouths and advised them that the payment which they had made did not satisfy the entire amount owing pursuant to the notice of default which the Ulerys had delivered to the escrow agent for service upon the Rouths. One reasonable conclusion which could be drawn from these circumstances is that the escrow officer was attempting to collect the default fee for the benefit of the sellers and accordingly was acting as the agent for the sellers when she initiated the disputed conversation on Saturday, March 27th. Accordingly, the trial court erred in ruling as a matter of law that the escrow officer was acting as the agent for the buyers.

Summary judgment is proper only where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). The record should be construed in a light most favorable to the non-moving party. *E.g., Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Moss v. Mid-American Fire & Marine Ins. Co.*, 103 Idaho 298, 647 P.2d 754 (1982). In the present case a material issue of fact existed as to whether the escrow officer was acting as agent for the sellers or agent for the buyers, and, if acting as agent for the sellers, whether the escrow officer advised the buyer Mr. Routh that it would be acceptable to make the payment on Monday, as Mr. Routh's affidavit states, rather than not acceptable as the bank officer's affidavit states.

Additionally, the buyers contend that the failure to pay the $50 expense fee was not a material breach which would entitle the

sellers to accelerate the entire unpaid purchase price balance of the contract. Since the summary judgment of the district court is reversed and the cause remanded for a trial, that, and any other defenses which the buyers may claim, can be raised at the trial and passed upon by the district court at that time.

The judgment of the trial court is reversed and the cause remanded to the trial court for further proceedings.

DONALDSON, C.J., BISTLINE, J., and WALTERS, J. pro tem., concur.

SHEPARD, J., concurs in result.

BISTLINE, Justice, specially concurring.

While I see nothing wrong with the Court's rationale for reversing, a far better result, and one commanded by case law precedent would be a reversal bottomed on that part of the court's opinion which observes that the buyers defended in the court below on the basis that the acceleration of the contract balance "was an unjust and unconscionable penalty." The learned trial judge saw it this way:

I'm convinced that the contract terms are clear. The Default Notice was clear in compliance with the contract. That the deadline passed and that the $50 payment was a required condition precedent to considering the default cured. And, therefore, the default was not timely cured. And that entitled the plaintiffs to exercise their options under the contract, which they have done. ... So I'm going to grant Summary Judgment to the plaintiffs. I think they are entitled to the remedy they have requested, which is the acceleration of the debt, therefore they're entitled to a Judgment for it under the contract.

Now, you have made a request to me that before I actually grant that remedy I give you an opportunity to convince me that I have the authority to fashion any—another remedy I find more equitable. I'm prepared to read such a brief and examine the case law. I caution you in advance that I am a Judge who be-lieves in the freedom of contract and have great difficulty with being granted the vast authority which many juries [sic, jurists] want to claim for themselves to rewrite and organize at will the lives of individuals. In short, I'm not fond of the idea of having the power to find a contract has been violated and then take the position that if I don't like the results of that violation I can fashion some other results. The idea I must·admit is foreign to me. I really don't think that Judges should have that power. But I—if the great weight of appellate authority is running that way, then, I don't think that I should sidestep it. I think that if the appropriate course of action is to determine whether I find this consequence equitable, then, I would accept that responsibility even though I would probably not choose it for myself. And I'm prepared to give you a chance to brief it. Tr., pp. 15–17 (emphasis added).

The underscored portion of the excerpt serves to suggest the trial court's disenchantment with the doctrine of *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954), a decision which emanated from an enlightened court and which has well-served the people of this state for over thirty years. The contract provision here utilized had nothing whatever to do with the real premise of the contract—that being the buyers' promise to make monthly payments until the property was paid for.

While it may not be doubted that the contract could exact from the buyers the requirement that they would be responsible for reimbursing the sellers' expenses in sending out a notice of default, I cannot conceive that there has ever before been an Idaho jurist who would uphold the sanctions of either acceleration or forfeiture for a buyer's failure to tender the amount of those expenses with the delinquent payment. Such a contract provision is simply unconscionable, and if enforced, it is the infliction of a penalty. This would be and was true here—where the penalty was acceleration followed by judicial sale whereat the sellers bid in $15,000 of their total

judgment of $27,230.51, resulting in the assessment of a deficiency judgment in excess of $12,000. The judgment of foreclosure included $23,002.92 balance due on the $36,000 original purchase price—thus establishing that over $13,000 in principal had been paid at time of foreclosure. The net result of the proceedings in the court below erased the buyers' equity of $13,000 in the premises, and left them owing a deficiency judgment in excess of $12,000, a total loss of $25,000.

From what did all this loss stem? The answer, an unbelievable one, is simply that the buyers were one day late in paying into the escrow the magnificent sum of $50—which was for the sole purpose of reimbursing the sellers for their expense in mailing the notice, the contract payments of purchase price having been brought current. The damage done to the sellers by the one day delay in tendering the paltry $50 is not difficult to estimate. Technically, the sellers were deprived of the $50 owed them for one day, and that debt carried with it the obligation of paying the legal rate of interest on that amount. Idaho case law should have taught the trial judge that "where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a 'penalty,' and the contractual provision therefore is void and unenforceable." *Graves, supra*, at 456, 272 P.2d at 1023.

If there has ever been a more obvious exorbitant and unconscionable penalty inflicted by a court for failure to comply with a more obviously arbitrary forfeiture or damage provision of a contract, I have never heard of it. Nor have I ever heard of a district judge who has ever done so in plain disregard of and disbelief in principles of established jurisprudence—in connection with which I submit a passage:

The most intolerable evil, however, under which we have lived for the past twenty-five years, has been the changing and shifting character of our judicial decisions, by which we have been deprived of the inestimable benefit of judicial precedents as a safeguard to our rights of person and property.

While I experience some problem in the contract provisions insofar as the sellers are given the right to forfeit the contract or to stand on the contract and accelerate it to maturity and foreclose it—for uncured default after notice—in that respectable authority holds that acceleration itself is a penalty (an almost self-proving truism as applied to this set of circumstances in the pertinent period and area of economic depression) putting that aside, and recognizing that *material* breach of contract for failure to make required monthly payments on the purchase price may ordinarily allow the seller to stand on the contract provisions, in no way can the failure of timely tendering of the $50 expense be said to constitute a material breach, thus enabling the seller to call in the entire contract balance, and then foreclose the contract.

The Court's reversal of the summary judgment, while it does undo the "horrible" injustice[1] perpetrated by the trial court, does not satisfy my belief that we should be also reversing the trial court more on the failure to comply with precepts of well-established case law. To which should be added that there also exists here a serious violation of statutory law. The sellers having exercised their option to treat the lien of the title-retaining contract as a mortgage, upon which they then foreclose, there must be compliance with I.C. § 6–108 as well as with I.C. § 11–402, under which latter section the sellers here obtained the foreclosure decree which spelled out that the buyers' redemption time was limited to six months. There was no compliance with § 6–108, under which for noncompliance

---

**1.** This selection of words follows from observing the language of the trial court in entering an order denying the buyers' motion for stay of execution pending appeal: "that it would be unfair to Plaintiffs to enter the stay of execution; that it would work a *horrible* prejudice to Plaintiffs; that there is no sound appealable issue in this case; and, that a stay of execution would not be appropriate." R., Vol. 2, p. 146.

therewith the court did not have jurisdiction to enter a deficiency judgment.