747 P.2d 61

**Larry E. ROOK, Plaintiff-Appellant,**

v.

**Eugene R. TROUT, M.D., and Jane Doe Trout, husband and wife, Defendants-Respondents.**

**No. 16647.**

Supreme Court of Idaho.

Nov. 4, 1987.

Rehearing Denied Jan. 7, 1988.

Mullin, Etter & Cronin, P.S., Spokane, Wash., and Michael J. Vrable, Coeur d' Alene, for plaintiff-appellant. R. Max Etter, Jr., and Steven M. Cronin argued.

Quane, Smith, Howard & Hull, Boise, for defendants-respondents. Kathryn A. Sticklen argued.

DONALDSON, Justice.[*]

This medical malpractice action is on appeal from an order of the district court granting summary judgment in favor of defendant-respondent, a health care provider. Plaintiff-appellant argues that there remains a factual dispute whether defendant adequately informed him of the risks attendant to medical treatment he received and of alternative courses of treatment. After reviewing the record before us and Idaho's informed consent statutes, I.C. §§ 39–4301 et seq., we hold that a genuine issue of material fact exists and, thus, reverse and remand.

The present controversy stems from medical treatment and subsequent surgery provided by defendant, Dr. Eugene R. Trout. On June 17, 1982, the plaintiff, Mr. Larry E. Rook, consulted with defendant primarily for a viral infection. During that visit, plaintiff also discussed long-standing upper extremity pain which the defendant diagnosed as thoracic outlet syndrome, a compression of nerves of the brachial plexus and the subclavian artery by the first rib and clavical, and surgery was tentatively scheduled to be performed one week later. The defendant again examined plaintiff on June 22, 1982, and confirmed the original diagnosis of thoracic outlet syndrome. Three days later, defendant performed a left transaxillary first rib resection on plaintiff (*i.e.*, he removed plaintiff's first rib on the left side). The surgery failed to improve plaintiff's condition and, in fact, left him with increased pain and discomfort, and damage to his long

thoracic nerve causing permanent winging of plaintiff's scapula.

Plaintiff filed suit on April 4, 1985, alleging that defendant had "fail[ed] to exercise or possess the standard of care of a reasonably prudent medical doctor practicing in Coeur d'Alene, Idaho, in the following particulars:

"A. Failed to perform the diagnostic tests and procedures necessary to arrive at a proper diagnosis of Plaintiff's condition.

"B. Failed to fully inform Plaintiff of the risks of surgery, and in particular, the risk of injury to the long thoracic nerve during first rib resection, and other possible significant injuries to the nerves and muscles of Plaintiff's back.

"C. Failed to inform Plaintiff of alternative treatment involving non-surgical remedies such as the use of anti-inflammatory medications and exercise.

"D. Failed to perform the surgical resection of Plaintiff's left first rib in a manner that met the applicable standards of community care, resulting in injury to Plaintiff."

Defendant responded by submitting his affidavit in which he stated that he was familiar with the standard of care for general surgeons in Coeur d'Alene, Idaho, and that the health care he provided to plaintiff "in regard to the allegations contained in the complaint complied, in all respects, with the standard of medical care applicable to physicians engaged in general surgery in Coeur d'Alene, Idaho." The plaintiff in turn filed his own affidavit in which he testified as follows:

"That the information contained herein is based upon affiant's personal knowledge. That affiant is the Plaintiff herein. That affiant was not informed of any alternative treatment to surgery by Dr. Trout, prior to the performance of the surgical procedure. That had I been informed that an alternative to surgery was an exercise program alone or in combination with certain drugs over a period of several weeks, I would not have consented to the surgical procedure that was

---

[*] DONALDSON, J., sat and participated fully in the decision and opinion prior to his death.

performed upon me by Dr. Trout, but would have undertaken the exercise program.

"That I was not informed of any risks involved in the surgical procedure performed by Dr. Trout, either by Dr. Trout or anyone else prior to consenting to said surgery. I signed a CONSENT TO OPERATION form, a copy of which is attached hereto and made a part hereof, on the date I checked into the hospital. Dr. Trout was not present at that time and there was no discussion regarding any risks or possible alternative methods of treatment prior to my signing said document. I was simply told by a hospital employee that the document needed to be signed in order for surgery to be performed."

The consent form, which was signed by the plaintiff prior to the surgery in question, states in pertinent part:

"1. I hereby authorize Dr. E.R. Trout and whomever he may designate as his assistants to perform upon Larry E. Rook the following operation: first rib resection on left and if any unforeseen condition arises in the course of the operation calling in his judgment for procedures in addition to or different from those now contemplated, I further request and authorize him to do whatever he deems advisable.

"2. The nature and purpose of the operation, possible alternative methods of treatment, the risks involved, and the possibility of complications have been fully explained to me. I acknowledge that no guarantee or assurance has been made as to the results that may be obtained.

" . . . .

"5. For the purpose of advancing medical education, I also consent to the admittance of observers to the operating room. I CERTIFY THAT I HAVE READ AND FULLY UNDERSTAND THE ABOVE CONSENT TO OPERATION, THAT THE EXPLANATIONS THEREIN REFERRED TO WERE MADE, AND THAT ALL BLANKS OR STATEMENTS REQUIRING INSERTION OR COMPLETION WERE FILLED IN AND INAPPLICABLE PARAGRAPHS, IF ANY, WERE STRICKEN BEFORE I SIGNED.

"Signature of patient: *Larry E. Rook*"

The only deposition in the record is that of the defendant. In his deposition, the defendant testified that in treating thoracic outlet syndrome, it is generally his practice to put the patient on an exercise program and to wait between one and six months before performing any corrective surgery. In the instant case, surgery was performed on the eighth day following the initial diagnosis. Defendant also testified that he has a "standard spiel" which he gives to all of his thoracic outlet syndrome patients prior to surgery, and that he "believes" this spiel was given to the plaintiff.[1] This is all

---

1. The pertinent portion of the deposition reads as follows:

"Q. Okay. On the 17th, other than advising Mr. Rook with respect to the percentage probability of help from the surgery, what else did you advise him, that you recall?
"A. Well, I can only state what I tell all of my patients and I don't have that documented, but I have a standard spiel—
"Q. All right.
"A. —in terms of risks. I also tell them that there are some possible complications and they are usually not serious and very minimal in their long-term effect.
"Q. Okay.
"A. One of them is partial collapse of the lung. You can tear the lining of the lung and let some air in, but this is aspirated; and other than having some increased pain typical of pleurisy or pleuritic pain, it causes no long-term problem.
An occasional person gets a traction problem, pulling—you pull on the arm or push on the nerve during the surgery, you can have transient weakness of a nerve. That comes back by itself. Occasionally, you can cut the artery or the vein and you repair the artery or the vein.
"Q. All right.
"A. That's what I tell my patients.
"Q. That's what you tell them. Now, did you specifically tell Mr. Rook these things?
"A. I believe—
"Q. Is that your testimony?
"A. I believe that I did.
"Q. You believe that you did. Can you answer me whether you did or whether you didn't, a yes or no?
" . . . .

denied by plaintiff in his affidavit. The defendant did admit, however, that he did not advise plaintiff of the possibility of injury to the thoracic nerve. He stated that at the time of surgery he had never seen this as a complication and had never read anything about it in the medical literature.

A motion for summary judgment was then filed by defendant, and in support defendant argued that the requirements of I.C. §§ 6–1012 and 6–1013 had not been met because plaintiff had submitted no direct expert testimony in support of his medical malpractice claim. Regarding the informed consent claim, defendant argued plaintiff had not overcome the presumption of sufficiency of consent (which arose by virtue of the signed consent form) by establishing with convincing proof that the consent was secured maliciously or by fraud. *See* I.C. § 39–4305 (presumption arises where signed consent form).

The trial court granted defendant's motion for summary judgment. The court noted an absence of "any competent expert testimony in the record contending that the surgery itself was performed contrary to the applicable standard of care in Coeur d'Alene." The court also found that the plaintiff had not presented sufficient evidence to rebut the presumption as to the validity and sufficiency of consent which arose pursuant to I.C. § 39–4305.

Plaintiff filed a Notice of Appeal and challenges only the entry of summary judgment against him on the informed consent claim. Plaintiff does not contend that he did not consent to the medical treatment at issue, but instead argues that his consent was not informed. When presented with appeals from orders granting summary judgment, it is our task to review the record before the court below, including the pleadings, depositions, admissions, and affidavits, if any, and to determine (a) whether, after construing the facts in the light most favorable to the non-moving party, there exist any genuine issues of material fact and (b) whether the successful movant below is entitled to judgment as a

matter of law. *Pincock v. Pocatello Gold & Copper Mining Co., Inc.,* 100 Idaho 325, 597 P.2d 211 (1979). *See also,* I.R.C.P. 56(c).

Initially, we note that plaintiff has raised a constitutional challenge to the presumption which arises from Idaho's informed consent statutes, when a written consent form has been signed by the person receiving medical treatment. However, plaintiff raises this argument for the first time on appeal and, therefore, we will not address it. *Green v. Young,* 102 Idaho 735, 639 P.2d 433 (1981).

This appeal provides us with our first opportunity to review the informed consent statutes passed by the Idaho Legislature in 1975. *See* I.C. §§ 39–4301, et seq. The purposes of the statutes are "to provide and codify" informed consent law in cases involving the provision of health care, and "to provide certainty and clarity in the law of medical consent in the furtherance of high standards of health care and its ready availability in proper cases." I.C. § 39–4301. With these purposes in mind, we must interpret the following provisions of the Idaho Code:

> "**39–4304. Sufficiency of consent.—** Consent for the furnishing of hospital, medical, dental or surgical care, treatment or procedures shall be valid in all respects if the person giving it is sufficiently aware of pertinent facts respecting the need for, the nature of and the significant risks ordinarily attendant upon such a patient receiving such care, as to permit the giving or withholding of such consent to be a reasonably informed decision. Any such consent shall be deemed valid and so informed if the physician or dentist to whom it is given or by whom it is secured has made such disclosures and given such advice respecting pertinent facts and considerations as would ordinarily be made and given under the same or similar circumstances, by a like physician or dentist of good standing practicing in the same community. As used in this section, the term 'in the same community' refers to that geo-

"A. The problem is not having a photograph- ic memory...."

graphical area ordinarily served by the licensed general hospital at or nearest to which such consent is given.

"**39–4305. Form of consent.**—It is not essential to the validity of any consent for the furnishing of hospital, medical, surgical or dental care, treatment or procedures that the same be in writing or any other form of expression; however, when the giving of such consent is recited or documented in writing and expressly authorizes the care, treatment or procedures to be furnished, and when such writing or form has been executed or initialed by a person competent to give such consent for himself or another, such written consent, in the absence of convincing proof that it was secured maliciously or by fraud, is presumed to be valid for the furnishing of such care, treatment or procedures, and the advice and disclosures of the attending physician or dentist, as well as the level of informed awareness of the giver of such consent, shall be presumed sufficient."

Section 39–4304 sets forth two alternative "defenses" which may be asserted by health care providers in informed consent cases. Unlike statutes of other states,[2] the first and second sentences of section 39–4304 are separate, not joined with an "and." Given the language of the section's first sentence which states that consent "shall be valid in all respects if ...," and the placement into separate sentences of the ideas embodied in the first two sentences, we must conclude that section 39–4304 provides alternative "defenses." The first is a codification of the "material information" patient-based standard of disclosure which this Court adopted in *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980). *See* discussion *infra*. The second, which is found in the second sentence of section 39–4304, grounds the level of disclosure in the then-existing standard of medical care practiced in the community. The parameters of this physician-based standard are admirably fleshed out by the Washington Supreme Court in *ZeBarth v.* *Swedish Hospital Medical Center*, 81 Wash.2d 12, 499 P.2d 1, 9–10 (1972), and need not be repeated here.

■ Defendant argues that his verified affidavit, in which he testifies as to his familiarity with the applicable standard of health care and his compliance therewith, establishes valid consent in accordance with the physician-based defense of section 39–4304 and entitles him to summary judgment. We cannot agree. Defendant's actual familiarity with the standard of care appears to lack the clarity suggested by his affidavit. Defendant in his deposition, testified as follows:

"Q. All right. Did the standard of care in 1982 in the community served by Kootenai Hospital require that you advise a patient of alternative forms of treatment?

"....

"A. [TROUT:] That's my standard of care.

"Q. What I'm asking is was that the standard of care for the medical practitioners in the community in which you practiced in 1982.

"A. [TROUT:] It's hard to know what they did, but the hearsay is that that was also their standard of care."

Further, as we discuss below, plaintiff has submitted an affidavit which creates a question of fact as to whether plaintiff was adequately informed of the risks and alternatives associated with his surgery. Accordingly, we hold that defendant's affidavit does not entitle him to judgment as a matter of law.

■ A question remains, however, as to whether plaintiff has made a prima facie showing on his informed consent claim. If not, then summary judgment in favor of defendant was proper. *See* I.R.C.P. 56(c). Initially, we struggled with I.C. § 39–4304 in the hope that it would illuminate the elements of a prima facie informed consent claim. However, the statute only provides for defenses. It has long been the rule

---

**2.** *See, e.g.,* FLA.STAT.ANN. § 768.46 (West Supp.1983); KY.REV.STAT. § 304.40–320 (1981); ME.REV.STAT.ANN. tit. 24, § 2905 (Supp.1983–1984); and N.C.GEN.STAT. § 90–21.13 (1981).

that changes in the common law by the adoption of a statute are not to be presumed, but must be clearly intended before they will be given effect. *See Williams v. Blakley,* Idaho, (Slip Op. No. 65, (1987); *Industrial Indemnity Co. v. Columbia Basin Steel & Iron, Inc.,* 93 Idaho 719, 471 P.2d 574 (1970); and *Sprouse v. Magee,* 46 Idaho 622, 630–31, 269 P. 993, 995–96 (1928). No such clear intent may be found in section 39–4304. It only discusses defenses. If we were to extrapolate from the statute and require plaintiff to prove a deviation from both the patient-based and the physician-based standard of disclosure we would be, in effect, adopting both the minority and the majority rule. *See Cobbs v. Grant, infra,* for a discussion of the split of authority. No court in the nation has done so. To give plaintiff a choice between the two standards would likewise lack any sense. Therefore, we hold that the enactment of I.C. § 39–4304 did not abrogate the common-law rule adopted in *LePelley.* The statute merely codifies appropriate defenses.

In *Lepelley, supra,* this Court adopted the analysis of *Cobbs v. Grant,* 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972), and established a patient-based standard of disclosure for informed consent cases. The *Cobbs* court described the standard:

"[T]he patient's right of self-decision is the measure of the physician's duty to reveal. That right can be effectively exercised only if the patient possesses adequate information to enable an intelligent choice. The scope of the physician's communications to the patient, then, must be measured by the patient's need, and that need is whatever information is material to the decision. Thus the test for determining whether a potential peril must be divulged is its materiality to the patient's decision."

*Cobbs, supra,* 104 Cal.Rptr. at 515, 502 P.2d at 11, *citing Canterbury v. Spence,* 464 F.2d 772, 786 (D.C.Cir.1972).

 In the case at bar, there is a genuine issue of material fact as to the exact nature of the disclosures made by the defendant, and whether information material to plaintiff's decision to proceed with the surgery was disclosed. The plaintiff argues that none of the risks or alternatives were discussed, whereas the defendant "believes" that his standard spiel which included mention of ordinary risks was given. This would create a question of fact under the *LePelley* standard. The court below, however, ruled in favor of defendant relying in large part upon the presumption created by I.C. § 39–4305. The trial court read that section as follows:

"The next section of the Act is Section 5 (39–4305 I.C.), which provided it is not necessary for the validity of any consent for surgery by a patient that it be made in writing or any other form of expression; however, *when the giving of such consent is in written form* and expressly authorizes the care, treatment or procedures to be furnished, such written consent, in the absence of convincing proof that it was secured maliciously or by fraud, 'is presumed to be valid for the furnishing of such care, treatment or procedures, and the advice and disclosures of the attending physician ... as well as the level of informed awareness of the giver of such consent, shall be presumed sufficient.'"

"The 1975 Legislature intended that hospitals, physicians or dentists could rely on such consents, and said legislature created one of the most strongly worded presumptions in the Idaho statutes in favor of the validity and sufficiency of such consents, in the absence of convincing proof that such consent was secured maliciously or by fraud. These presumptions address the subject of:

1. The validity of such consent for the furnishing of such care.

2. The sufficiency of the advice and disclosures of the attending doctor.

3. The sufficiency of the level of informed awareness of the patient."

(Emphasis in original.)

The trial court misreads I.C. § 39–4305. We read the section as follows: *If* (a) "the giving of such consent is recited or documented in writing and expressly autho-

rizes the care, treatment or procedures to be furnished," and (b) "such writing or form has been executed or initialed by a person competent to give such consent for himself or another," *then* (a) "such written consent, in the absence of convincing proof that it was secured maliciously or by fraud, is presumed to be valid *for the furnishing* of such care, treatment or procedures," *and* (b) "the advice and disclosures of the attending physician or dentist, as well as the level of informed awareness of the giver of such consent, shall be presumed sufficient."

■ The convincing proof requirement applies only to challenges regarding whether the patient consented to "the furnishing" of medical care, not to challenges to the sufficiency of the "advice and disclosures" and the "level of informed awareness." If plaintiff here were alleging that he consented only to a tonsillectomy, not a "first rib resection on left" as the consent form he signed stated, then he would be required by I.C. § 39–4305 to disprove consent to "the furnishing" of medical care with "convincing proof that [the consent] was secured maliciously or by fraud." However, plaintiff does not challenge "the furnishing" but rather "the advice and disclosures" given to him and the "level of informed awareness." Where a written consent is signed, the statute states that the advice and level of informed awareness are only "presumed sufficient." The plaintiff need not establish by convincing proof that the consent was secured maliciously or by fraud, as the trial court required.

Because plaintiff was challenging only the "advice and disclosures" and the "level of informed awareness," he was only required to overcome an ordinary presumption as to the sufficiency of consent. Given the equivocal statements of the defendant regarding his disclosures and the unequivocal affidavit submitted by plaintiff, we hold that the trial court erred in granting summary judgment in favor of defendant on the informed consent count. Plaintiff has made out a prima facie informed consent case in accordance with the *LePelley* standard.

The case is reversed and remanded for further proceedings not inconsistent with this opinion.

No costs and no attorney fees on appeal.

SHEPARD, C.J., and BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, Chief Justice, specially concurring.

I concur in the result reached in the majority opinion, but in my view its rationale is unnecessarily complex and its reasoning somewhat obtuse.

The decisional law regarding consent to medical treatment arose from the common law prohibition of an unprivileged touching. As it became recognized that the patient should control his own destiny, the decisional law of "informed" consent evolved. It was reasoned that a mere consent to medical procedures was largely meaningless unless the treatment, procedures and risks were sufficiently explained to the patient, thus affording the patient a meaningful basis upon which to go forward or refuse the treatment. *LePelley v. Grefenson,* 101 Idaho 422, 614 P.2d 962 (1980).

It is my belief that I.C. §§ 39–4304 and 39–4305 merely codified the decisional case law with an obvious additional built-in protection to the physician. In my view the statutes only provide that for a consent to be valid it must be prefaced with "pertinent facts" pertaining to the need for, the nature of, and the significant risks of the treatment. The required "pertinent facts" must be those which would be given by a like physician practicing in the same community.

I.C. § 39–4305 provides that such consent need not be in writing, but that if the consent is in writing a presumption arises from the fact of the writing. Excepting the elements of maliciousness or fraud, it is *presumed* that the patient has consented to the treatment and has received sufficient pertinent facts that the consent is "informed."

In the instant case plaintiff-patient readily admits signing the consent form. Thus, under the statute a presumption arises that

the physician has furnished the patient with sufficient information to make the patient's consent "informed." However, the patient, by way of affidavit, emphatically denies that the physician provided sufficient information regarding any risks of the surgery or any possible alternative methods of treatment. At the point of summary judgment it is axiomatic that all facts, and the inferences arising therefrom, must be construed most favorably in the light of the non-moving party. *Ulery v. Routh,* 107 Idaho 797, 693 P.2d 443 (1984); *Casey v. Highlands Insurance Co.,* 100 Idaho 505, 600 P.2d 1387 (1979); I.R.C.P. 56(c). Hence, at this juncture it is deemed established that the physician did not furnish sufficient information to make the consent of the patient "informed," and the theretofore existing presumption is no longer effective nor operative. The fact that the physician, to some extent, asserts byway of affidavit that he did indeed furnish the patient sufficient information to make the consent informed, merely creates an issue of controverted fact the resolution of which is improper at summary judgment.

The presumption created by the statute at issue here is no different than those presumptions in other areas of the law. Under the trial court's interpretation of the statute, the presumption created therein would be well nigh conclusive and irrebuttable. If such were the intent of the legislature it could have, and can be, expressed by a simple language change.

BAKES, Justice, concurring specially:

I concur in the result reached by the majority but disagree with the Court's analysis. Particularly, I disagree with the Court's conclusion that I.C. § 39–4304 establishes "a patient-based standard of disclosure for informed consent cases." *Ante* at 657, 747 P.2d at 66. The Court quotes approvingly from *Cobbs v. Grant,* 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972), that "[t]he scope of the physician's communications to the patient, then, must be measured by the patient's need, and that need is whatever information is material to the decision." The Court's opinion, which is based, at least in part, on the quotation from *Cobbs,* establishes a subjective patient-based standard which is contrary to the express language contained in I.C. § 39–4304 that "[a]ny such consent shall be deemed valid ... if the physician ... to whom it is given ... has made such disclosures and given such advice respecting pertinent facts and considerations as would ordinarily be made and given under the same or similar circumstances, *by a like physician ... of good standing practicing in the same community.*" (Emphasis added.) The Idaho statute adopts an objective physician-community standard, not the subjective patient-based standard of foreign jurisdiction cases such as *Cobbs.*

However, the Court's opinion is correct that the plaintiff's affidavit denies that any disclosures were ever made, and the defendant's affidavit was unclear on the issue of whether or not the disclosures which he made met the community standard. Therefore, construing the record most favorably to the appellant, summary judgment should not have been granted based upon this record.

The presumption set out in I.C. § 39–4305, as it relates to the advice and disclosure requirements appears to be an ordinary presumption [1] which, when faced

---

1. I.C. § 39–4305, as written, is somewhat ambiguous. It is unclear whether the evidentiary requirement of "convincing proof that it was secured maliciously or by fraud" applies to both "care, treatment or procedures" as well as the "advice and disclosures of the attending physician" and the "level of informed awareness of the giver of such consent." If the sentence ended with the word "consent," and the last four words, "shall be presumed sufficient," were omitted, the evidentiary requirement of convincing proof of malice or fraud would probably apply both to the care, treatment or procedures, as well as the advice and disclosures and the awareness of the giver of such consent. However, the majority of the Court is probably correct that the sentence, as presently drafted, limits the convincing proof of malice or fraud requirement to the care, treatment or procedures portion of the written consent, and not to the advice and disclosures portion, which presumably is an ordinary presumption. If the Court's interpretation does not comport with the legislature's intentions, the problem can be easily remedied by the legislature.

with the conflicting affidavits regarding the advice and disclosures made, does not preclude the triable issue of fact regarding whether or not the respondent gave any advice and disclosures, and whether those disclosures were the same as "would ordinarily be made and given under the same or similar circumstances by a like physician or dentist of good standing practicing in the same community."