# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47800

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | Boise, June 2020 Term |
| | ) | |
| Plaintiff-Respondent, | ) | Opinion Filed: October 2, 2020 |
| | ) | |
| v. | ) | Melanie Gagnepain, Clerk |
| | ) | |
| DARIUS WAYNE HAWS, | ) | THE COURT'S PRIOR OPINION |
| | ) | DATED SEPTEMBER 9, 2020 IS |
| Defendant-Appellant. | ) | HEREBY AMENDED. |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Fremont County. Gregory M. Moeller, District Judge.

The appeal from the sentences imposed is <u>dismissed</u>. The district court's decision to relinquish jurisdiction over Haws is <u>affirmed</u>.

Eric D. Frederickson, State Appellate Public Defender, Boise, for appellant Darius Wayne Haws. Kimberly Coster argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Kenneth Jorgensen argued.

_____

STEGNER, Justice.

Darius Haws appeals from the judgments of conviction entered against him upon his guilty pleas to delivery of a controlled substance and battery on a police officer. Haws' guilty pleas were entered pursuant to plea agreements in which he waived his right to appeal his convictions or sentences. The district court sentenced Haws to two years fixed, with four years indeterminate, for the delivery charge; and one year fixed, with three years indeterminate, for the battery charge. The sentences were ordered to run consecutively. Additionally, the district court retained jurisdiction over Haws. However, after Haws performed poorly during the period of retained jurisdiction, the district court relinquished jurisdiction over Haws and ordered that the original sentences be served by Haws.

Haws appealed, arguing that the district court abused its discretion in relinquishing jurisdiction and that his sentences were excessive. In response, the State sought to have Haws' appeal dismissed because Haws expressly waived his right to appeal his sentences in the plea

1

agreements he signed. The Court of Appeals agreed, dismissing Haws' challenge to his sentences and affirming the district court's decision to relinquish jurisdiction over Haws.

Haws filed a petition for review with this Court, arguing that the Court of Appeals incorrectly held that he had forfeited the right to address the validity of his plea agreements by not raising an issue of validity of those waivers in his opening brief. Instead, Haws contends that it was the State's obligation to assert the applicability of the appellate waiver, and that he should have had the opportunity to respond in his reply brief. Additionally, Haws contends that his appellate waiver was not made knowingly, intelligently, and voluntarily because the district court made a statement that conflicted with the written plea agreements by noting that Haws had the right to appeal his sentences.

For the reasons set out in this opinion, we dismiss Haws' appeal from the sentences imposed. Further, we affirm the district court's decision to relinquish jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fremont County law enforcement used confidential informants to make several purchases of controlled substances from Haws and his brother between April and May of 2015. While a number of sales were made, only three are relevant to this appeal. On April 21, 2015, Haws sold twelve hydrocodone pills to a confidential informant. On May 11, 2015, Haws' brother sold a confidential informant morphine pills. That same day, Haws' brother also sold marijuana to a confidential informant. During these two latter sales, Haws acted as the lookout.

Haws was arrested and charged by the State with three counts related to the sales of controlled substances between April and May of 2015. The State charged Haws with delivery of a controlled substance, related to the sale of the twelve hydrocodone pills on April 21, 2015. The State also charged Haws with two counts of aiding and abetting the delivery of a controlled substance for acting as the lookout during his brother's sale of morphine pills and marijuana.

While out on bond, Haws committed other crimes. On February 28, 2017, Haws went to the residence of a female acquaintance. The woman called the police to report that Haws was trespassing. The police responded to the woman's call. As a law enforcement officer approached Haws, the officer could "smell a strong odor of alcohol coming from [Haws'] breath." When the officer attempted to arrest Haws, Haws resisted, swinging his arm and hitting the officer. Based on this altercation, the State charged Haws with battery on a police officer, resisting and obstructing an officer, criminal trespass, and disturbing the peace.

2

On April 26, 2017, Haws entered into two plea agreements, one on the controlled substance charges, and the second on the battery and resisting charges. According to the plea agreement related to the controlled substance charges, Haws agreed to plead guilty to delivery of a controlled substance in exchange for the dismissal of the remaining aiding and abetting charges. Additionally, the State agreed to recommend that Haws be incarcerated for two years fixed with three years indeterminate. Further, the State would recommend that the district court retain jurisdiction over Haws. Similarly, according to the plea agreement relating to the battery charge, Haws agreed to plead guilty to battery on a police officer in exchange for the remaining charges to be dropped. The State would recommend that Haws be sentenced to two years fixed and three years indeterminate, to run consecutive with the sentence imposed in the controlled substance case. Again, the State would recommend that the district court retain jurisdiction over Haws.

Both plea agreements contained language regarding a waiver of certain rights. Among other rights, the plea agreements provided that Haws would waive his "right to appeal [his] conviction and the sentence[s] imposed." Further, both agreements contained language to the effect that the agreements were entered into intelligently, knowingly, and voluntarily.

Following a sentencing hearing, Haws was sentenced for both delivery of a controlled substance and battery of a police officer. The district court sentenced Haws to two years fixed, with four years indeterminate,[1] for the delivery charge. As for the battery charge, the district court sentenced Haws to one year fixed, with three years indeterminate. The district court ordered the sentences to run consecutively.

The district court retained jurisdiction over Haws. Additionally, the district court ordered that Haws be placed on a "treatment rider" to address his alcohol abuse and history of criminal behavior. Haws arrived at the facility at the end of July 2017. During the period of retained jurisdiction, Haws had few corrective actions, although his overall performance was poor. According to the addendum to the PSI, "Haws . . . struggled in groups to meet the basic standard and continue[d] to have difficulty identifying appropriate new thinking, instead replacing it with yet more risky thinking." He was "passively resistant to doing the work, claiming he [could not]

---

[1] Without explanation, the district court sentenced outside the State's recommendation by adding a year to the indeterminate portion of Haws' sentence. However, the district court was operating within its discretion in doing so, given the specific terms of the plea agreement.

hear, [could not] see the board, [did] not understand the role-plays," and failed to properly participate in the role-playing assignments. "While Mr. Haws did for a short time increase his participation, his increased performance was not on a consistent basis[.]" "Haws . . . struggled a great deal with engagement in his own recovery and [did] not appear to be motivated to complete even voluntary treatment options."

In late November 2017, the Department of Correction recommended that the district court relinquish jurisdiction over Haws. The recommendation was the result of Haws failing to obey a direct order to move to another bunk. Haws stated that "he would rather go to the hole than move where he had people on both sides" of him. His conduct resulted in responders being called to the facility.

Following a Rider Review Hearing, the district court entered an order on April 2, 2018, relinquishing jurisdiction over Haws based on the recommendation from the Department of Correction. The effect of the district court relinquishing jurisdiction was imposition of the original sentences.

Haws timely appealed from his sentences in both cases, and from the order relinquishing jurisdiction. The appeal was assigned to the Court of Appeals. On appeal, Haws argued that the district court abused its discretion in imposing an excessive sentence and by relinquishing jurisdiction. In response, the State argued that Haws' appeal should be dismissed because he waived his right to appeal his sentences when he entered into the plea agreements. The Court of Appeals agreed, and dismissed Haws' appeal from his sentences. *State v. Haws*, No. 46225, 2019 WL 8017375, at *1 (Idaho Ct. App. Oct. 25, 2019). Notwithstanding the dismissal of Haws' appeal, the Court of Appeals addressed the arguments regarding the order relinquishing jurisdiction, concluding that the district court did not abuse its discretion in relinquishing jurisdiction. *Id.*

Haws filed a petition for review, arguing that the Court of Appeals incorrectly held that he had forfeited the right to address the validity of his plea agreements by not raising an issue of validity of those waivers in his opening brief. Instead, Haws contends that it was the State's obligation to assert the applicability of the appellate waiver, and Haws should then have had the opportunity to respond in his reply brief. Additionally, Haws contends that his appellate waiver was not made knowingly, intelligently, and voluntarily because the district court made a

4

statement that conflicted with the written plea agreements by noting that Haws still had the right to appeal his sentences.

This Court granted the petition for review.

## II.  STANDARD OF REVIEW

"When considering a case on review from the Court of Appeals, we do 'not merely review the correctness of the decision of the Court of Appeals.'" *State v. Glodowski*, 166 Idaho 771, 774, 463 P.3d 405, 408 (2020) (quoting *State v. Young*, 138 Idaho 370, 372, 64 P.3d 296, 298 (2002)). Rather, "this Court acts as though it is hearing the matter on direct appeal from the decision of the trial court; however, this Court does give serious consideration to the decision of the Court of Appeals." *Id.* (quotation omitted).

## III.  ANALYSIS

### A.  Haws was not obligated to raise the validity of the waiver of his right to appeal in his opening brief in order for the validity of the agreement to be reviewed by this Court.

In his opening brief, Haws does not challenge the validity of the waiver of his appellate rights. Instead, Haws addressed the validity of his appellate waiver in his reply brief after the State asserted that his appeal should be dismissed based on that appellate waiver. The Court of Appeals declined to address Haws' argument regarding the validity of the appellate waiver because Haws failed to raise the issue in his opening brief. *Haws*, 2019 WL 8017375, at *1. As a result, the Court of Appeals dismissed Haws' appeal from his sentences. *Id.*

In his petition for review, Haws argues that "[b]ecause it is the State's obligation to assert and prove the enforceability of the waiver, and because the State would forfeit its waiver argument by failing to raise it, there is no reason to require a defendant to address the waiver issue, anticipatorily, in his opening brief." The State did not respond to the petition for review.[2]

"Plea agreements are essentially bilateral contracts between the prosecutor and the defendant." *McKinney v. State*, 162 Idaho 286, 296, 396 P.3d 1168, 1178 (2017) (quoting *State v. Guess*, 154 Idaho 521, 524, 300 P.3d 53, 56 (2013)). Therefore, this Court reviews plea agreements using general contract principles. *State v. Cope*, 142 Idaho 492, 495, 129 P.3d 1241, 1244 (2006) (citation omitted). "The interpretation of a contract's meaning and legal effect are

---

[2] Idaho Appellate Rules do not allow for a response to a petition for review unless this Court requests a party to respond before it grants or denies the petition. I.A.R. 118(c)(1). The Court did not request the State to respond to Haws' petition for review and consequently no response to the petition was filed.

questions of law to be decided by the Court if the terms of the contract are clear and unambiguous." *Dunlap v. State*, 141 Idaho 50, 63, 106 P.3d 376, 389 (2004) (quotation omitted).

Generally, "a party may waive a provision in a contract made exclusive for [the party's] benefit." *Ulery v. Routh*, 107 Idaho 797, 799, 693 P.2d 443, 445 (1984) (alteration in original) (quoting *Schmidt v. Village of Kimberly*, 74 Idaho 48, 59–60, 256 P.2d 515, 521 (1953)); *see also* 13 Williston on Contracts § 39:36 (4th ed.) ("The general view is that a party to a written contract can waive a provision of that contract by conduct . . . ."). This rule would equally apply to plea agreements because this Court reviews plea agreements using general contract principles. *See Cope*, 142 Idaho at 495, 129 P.3d at 1244. Likewise, the United States Supreme Court has held that the prosecution may forfeit an appellate waiver by failing to raise the applicability of the waiver. *See Garza v. Idaho*, 139 S. Ct. 738, 744–45 (2019) (citation omitted) ("[E]ven a waived appellate claim can still go forward if the prosecution forfeits or waives the waiver."); *see also United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006) ("In the absence of the government's objection to [the defendant's] appeal based on his appeal waiver, the waiver is not binding because the government has waived the issue.").

This Court has also recognized that defendants should be afforded the opportunity to respond to the State's assertion of the applicability of an appellate waiver. *See McKinney*, 162 Idaho at 296, 396 P.3d at 1178. In *McKinney*, this Court stated,

> [i]f a defendant files an appeal and has waived the right to appeal the only issue(s) that the defendant seeks to raise on appeal, and that fact is brought to our attention before oral argument, we will issue an order conditionally dismissing the appeal in order to give the defendant an opportunity to show good cause why the appeal should not be dismissed. If the defendant cannot do so, we will dismiss the appeal. . . .
>
> If the defendant has challenged the validity of the waiver of the right to appeal, we will address that issue and, if it is decided against the defendant, we will dismiss the appeal without addressing the other issue(s).

*Id.*

When presented with the same question, federal circuit courts have held similarly. *See, e.g.*, *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (creating a procedure in which the State must assert the applicability of an appellate waiver, then allowing the defendant the opportunity to respond); *United States v. Goodson*, 544 F.3d 529, 534 (3d Cir. 2008) ("[I]t is

6

incumbent upon the government to invoke the [appellate] waiver's applicability in the first instance" because the government is the party who bargained for and benefits from the waiver).

In this case, Haws was not obligated to raise the issue regarding the validity of his appellate waiver in his opening brief. As the State is the sole beneficiary of an appellate waiver, it is the State's obligation to invoke the applicability of that waiver. *See Ulery*, 107 Idaho at 799, 693 P.2d at 445. Further, a defendant should have the opportunity to respond once the waiver is invoked because there are many situations in which an appellate waiver might not be applicable to an immediate appeal or the waiver might be invalid. *See Garza*, 139 S. Ct. at 744. Finally, this Court has recognized that a defendant should have the opportunity to respond to the State's invocation of an appellate waiver, whether it is through a brief following a conditional dismissal of the appeal or in the reply brief. *See McKinney*, 162 Idaho at 296, 396 P.3d at 1178. In other words, while an appeal may be subject to dismissal based on an appellate waiver, the State is the party who must invoke the application of the waiver, and the defendant must be afforded an opportunity to respond. *See id.*

We want to emphasize that the better and preferred practice would be for the State to file a motion to dismiss the appeal rather than invoke the appellate waiver in its response brief. It was noted during oral argument that the State was not aware of the appellate waiver until after the briefing had been scheduled. However, the State could have filed a motion to dismiss the appeal and sought to stay the briefing. This would be the preferred procedure.

We conclude Haws should be afforded the opportunity to respond to the State's appellate waiver arguments in his reply brief; as a result, given the procedural posture of this case, the issue has not been forfeited by Haws because he did not address this issue in his initial brief. Accordingly, this Court will address whether Haws made a knowing, intelligent, and voluntary waiver of his appellate rights.

### B. Haws made a knowing, intelligent, and voluntary waiver of his appellate rights. Accordingly, his appeal will be dismissed.

In his reply brief, Haws argued that the waiver of his appellate rights were not mentioned at the plea hearing, notwithstanding the exhaustive discussion concerning all of the rights Haws would be waiving.

During the plea hearing, the district court inquired into Haws' understanding of the plea agreements. This inquiry included questions regarding whether Haws understood that he would

be waiving certain rights. Relevant to this appeal, the district court and Haws engaged in the following discussion:

> THE COURT: Do you understand that if you plead guilty, you're giving up any and all other rights that you may have as a defendant in a criminal case, including those that I may not have mentioned here in court today?
>
> [HAWS]: Yes.
>
> THE COURT: Do you understand that if you plead guilty, you're giving up all your defenses to this case and basically only reserving your right to appeal the sentences that will come down later?
>
> [HAWS]: Yes.

Although the Court of Appeals did not explicitly address this argument, it stated, "during the plea colloquy, Haws affirmed that he understood the terms of the plea agreement before he entered guilty pleas." *Haws*, 2019 WL 8017375 at *1 (citations omitted). In reaching this conclusion, the Court of Appeals cited *State v. Cope*, 142 Idaho at 495–99, 129 P.3d at 1245–49, in which this Court rejected a defendant's argument that a district court's oral pronouncement invalidated an appellate waiver. Accordingly, it appears the Court of Appeals concluded that the district court's apparent misstatement that Haws had reserved his right to appeal the sentences did not invalidate Haws' written waiver of his right to appeal. *See Haws*, 2019 WL 8017375 at *1.

In his petition for review, Haws argued that his appellate waiver should not be enforced because the record demonstrated that his waiver had not been made knowingly, intelligently, and voluntarily because the district court stated in court that Haws had the right to appeal his sentence.[3] Further, Haws argues that the Court of Appeals' reliance on *Cope* was misplaced. Instead, Haws argues that *Cope* stands for the proposition that a district court's statements made *at sentencing* could not *retrospectively* alter the defendant's understanding at the time he entered his guilty plea. In contrast, Haws contends that this case involves statements made *during* the plea colloquy, prior to the entry of his guilty pleas but after the plea agreements had been signed.

Generally, this Court will uphold a waiver of a defendant's appellate rights if the record shows the waiver was made knowingly, intelligently, and voluntarily. *Cope*, 142 Idaho 496, 129

---

[3] The Court notes that Haws does not challenge the voluntariness of his plea, but instead disputes the applicability of the agreement itself, specifically whether it barred his right to pursue an appeal based on his colloquy with the trial judge.

P.3d 1245; *see also State v. Lee*, 165 Idaho 254, 259, 443 P.3d 268, 273 (Ct. App. 2019). The question in this case is whether the misstatement by the district court that Haws had reserved his right to appeal his sentence, in direct conflict with the written plea waiver, demonstrated that Haws did not understand he was waiving his appellate rights. We conclude that it does not.

This Court addressed a similar question in *Cope*, 142 Idaho at 497, 129 P.3d at 1246. In *Cope*, this Court considered whether "the district court's oral reference to [a defendant's] right to appeal made at the sentencing hearing" nullified Cope's appellate waiver made in a plea agreement. *Id.* While the Court ultimately decided the case on the basis that the statements made by the district court did not conflict with the written plea agreement, the Court reviewed the legal landscape of statements made by district courts that conflict with written plea agreements.

The Ninth Circuit addressed this question, and stands alone in its conclusion that a statement by a district court may nullify an appellate waiver. In *United States v. Buchanan*, 59 F.3d 914, 917–18 (9th Cir. 1995), the defendant orally moved to withdraw his guilty plea at the sentencing hearing. *Id.* at 916. During the argument, the district court stated that Buchanan "could appeal the sentencing findings." *Id.* at 916. Instead of Buchanan withdrawing his guilty plea, the parties filed a modification to the plea agreement. *Id.* The modified plea agreement stipulated that Buchanan waived his right to appeal his sentence, as long as his sentence was within the applicable sentencing guidelines. *Id.* Despite that waiver clause, the district court, during sentencing, again informed Buchanan that he could appeal his sentence. *Id.* at 917. Regarding Buchanan's right to appeal, the Ninth Circuit held:

> [H]ere, the oral pronouncement must control. The district court twice stated that Buchanan had a right to appeal his sentence. Indeed, Buchanan's answer of "Yes, sir" to the district court's question of whether he understood that he had a right to appeal indicates Buchanan's expectation that he could appeal his sentence and evinces a misunderstanding of the substance of his plea agreement. We note also that the government did not object to the district court's erroneous statements. Thus, Buchanan could have no reason but to believe that the court's advice on the right to appeal was correct.

*Id.* at 917–18.

Following *Buchanan*, the Ninth Circuit clarified and narrowed its position regarding oral pronouncements by district courts in *United States v. Lopez-Armenta*, 400 F.3d 1173 (9th Cir. 2005). In *Lopez-Armenta*, the defendant pleaded guilty and waived his right to appeal. *Id.* at 1174. Later at the sentencing hearing, the district court informed Lopez that he had the right to

appeal. *Id.* at 1175. On appeal, Lopez cited to *Buchanan*, arguing that the court's statement informing him that he had a right to appeal trumped his appellate waiver. The Ninth Circuit did not accept Lopez's argument, and explained how *Buchanan* is to be applied:

> *Buchanan* addresses the situation in which confusion regarding appellate rights *arises contemporaneously with the waiver*, while [*United States v. Floyd*, 108 F.3d 202 (9th Cir. 1997), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 949 (9th Cir. 2007)] applies where the defendant attempts to have later confusion "relate back" to his waiver. Accordingly, we hold that Lopez knowingly and voluntarily waived his right to appeal the suppression ruling, and his waiver was not affected by the district court's ambiguous statement three months later at the sentencing hearing.

*Lopez-Armenta*, 400 F.3d at 1177 (italics added).

However, as this Court noted in *Cope*, almost every federal circuit court has criticized the holding in *Buchanan*. *See, e.g.*, *United States v. Fisher*, 232 F.3d 301, 303–04 (2d Cir. 2000); *United States v. Atterberry*, 144 F.3d 1299, 1301 (10th Cir. 1998); *United States v. Michelsen*, 141 F.3d 867, 872–73 (8th Cir. 1998); *United States v. Ogden*, 102 F.3d 887, 888–89 (7th Cir. 1996); *United States v. Melancon*, 972 F.2d 566, 568 (5th Cir. 1992); *see also United States v. Arrellano*, 213 F.3d 427, 431 (8th Cir. 2000) (quotation omitted) ("Any statement by the court at the sentencing hearing could not have affected [the defendant's] decision, made nearly three months earlier, to plead guilty and waive his appellate rights.").

For example, the Sixth Circuit noted in *Fleming*:

> [W]e expressly decline to adopt the Ninth Circuit's rule [*Buchanan*], and add our voice to the chorus of criticism of that decision. . . .
>
> No other circuit has adopted the rule of *Buchanan*, but several have spoken on the issue. The Eighth Circuit declined to follow *Buchanan* on the basis that "[a]ny statement by the court at sentencing could not have affected [the defendant's] decision ... to plead guilty and waive his appellate rights." *United States v. Michelsen*, 141 F.3d 867, 872 (8th Cir.1998), *see also, United States v. Arrellano*, 213 F.3d 427 (8th Cir.2000). . . .
>
> . . . It is sufficient to say that any pronouncement from the bench that seeks unilaterally to amend a plea agreement exceeds the court's authority under the Criminal Rules and is without effect.

*Fleming*, 239 F.3d 761, 765 (6th Cir. 2001). In other words, it appears that the concern of those circuits that have rejected the Ninth Circuit's approach is that the statement made by the district court cannot *retrospectively* negate the defendant's knowing, intelligent, and voluntary waiver

10

because it did not influence the defendant's decision to plead guilty and waive his appellate rights.

We agree with the majority of federal courts that a misstatement by the district court cannot, by itself, invalidate a plea agreement which is made knowingly, intelligently, and voluntarily. Instead, we hold that any misstatement by the district court should merely be a fact to consider when determining whether the defendant made a knowing, intelligent, and voluntary waiver of his appellate rights.

Here, we hold that the defendant made a knowing, intelligent, and voluntary waiver of his appellate rights. Both plea agreements contained language that the plea agreements were entered into knowingly, intelligently, and voluntarily. Further, during the plea colloquy, the district court asked about Haws' understanding of the agreements multiple times. For example, the district court had the following exchange with Haws:

> THE COURT: Now, Mr. Haws, I've looked at both plea agreements carefully; and they both bear your signature. Is that not true?
>
> [HAWS]: Yes.
>
> THE COURT: And by signing the agreement, can I conclude that that means that you've read through the agreement?
>
> [HAWS]: I have, Your Honor.
>
> THE COURT: By signing the agreement, can I conclude that that means that you understood what you read?
>
> [HAWS]: Yes.
>
> THE COURT: And by signing the agreement, can I conclude that that means you agree to all the terms contained therein?
>
> [HAWS]: Yes, Your Honor.

Based on the conversations during the plea colloquy and the language in the plea agreements, the district court found that Haws "understood and consented to the terms of the plea agreements." Therefore, there is no doubt that Haws made a voluntary, knowing, and intelligent waiver of his appellate rights. Here, the district court's misstatement did not affect Haws' decision to plead guilty or to waive his appellate rights. Accordingly, the district court's conflicting statement did not invalidate Haws' knowing, intelligent, and voluntary waiver of his appellate rights.

**C.**     **The district court did not abuse its discretion in relinquishing jurisdiction.**

As a preliminary matter, this Court reaches this issue because the district court's decision to relinquish jurisdiction over Haws is outside the scope of Haws' appellate waiver. In his plea

agreements, Haws waived his right to appeal his convictions and the sentences imposed. However, the decision to relinquish jurisdiction is outside the applicability of the appellate waiver. Accordingly, we will address the issue on its merits.

Following the district court's pronouncement of Haws' sentence, the district court retained jurisdiction over him. The district court placed Haws on a "treatment rider" to address his history of alcohol abuse and criminal behavior. Haws performed poorly during the period of retained jurisdiction. According to the addendum to the PSI, "Haws . . . struggled in groups to meet the basic standard and continue[d] to have difficulty identifying appropriate new thinking, instead replacing it with yet more risky thinking." He was "passively resistant to doing the work, claiming he [could not] hear, [could not] see the board, [did] not understand the role-plays," and failed to properly participate in the role-playing assignments. "While Mr. Haws did for a short time increase his participation, his increased performance was not on a consistent basis[.]" Eventually, the Department of Correction recommended that the district court relinquish jurisdiction over Haws after a dispute in which Haws refused to switch bunks. The district court entered an order relinquishing jurisdiction over Haws based on the recommendation from the Department of Correction.

On appeal, Haws argues that the district court abused its discretion in relinquishing jurisdiction. Haws contends that his mental and physical challenges were improperly interpreted as "resistance." Further, Haws argues that his mental struggles were not taken into consideration regarding the bunk dispute, asserting that Haws' mental state was challenged by being crowded. The State responds, arguing that Haws did not perform well during the period of retained jurisdiction. Further, the State contends that the district court articulated and applied the correct legal standard applicable to the decision to relinquish jurisdiction.

"The decision to relinquish jurisdiction . . . is committed to the district judge's discretion." *State v. Le Veque*, 164 Idaho 110, 113, 426 P.3d 461, 464 (2018) (quoting *State v. Coassolo*, 136 Idaho 138, 143, 30 P.3d 293, 298 (2001)); *see also* I.C. § 19-2601. When reviewing a district court's decision for an abuse of discretion, this Court analyzes "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun*

*Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). Finally, a district court's decision to relinquish jurisdiction will not be deemed an abuse of discretion if the district court has "sufficient information to determine that a suspended sentence and probation would be inappropriate under [I.C. § 19–2521]." *State v. Brunet*, 155 Idaho 724, 729, 316 P.3d 640, 645 (2013) (alteration in original) (quoting *State v. Statton*, 136 Idaho 135, 137, 30 P.3d 290, 292 (2001)).

The district court did not abuse its discretion in relinquishing jurisdiction over Haws. The district court reviewed the applicable standards, including the factors under Idaho Code section 19-2521. The district court ultimately concluded that "there [was] an undue risk that during any period of suspended sentence or probation that the defendant [would] commit another crime." While the district court recognized that mitigating factors existed in the case, the district court concluded that it could not "find that [the mitigating factors] are present to the degree that it would cause the [c]ourt to feel differently" about imposing a prison sentence.

Further, the district court had sufficient information to believe that there was an undue risk that Haws would commit another crime if he were granted probation. For example, the district court noted that Haws had fourteen misdemeanors, three prior felonies, and approximately eight probation violations. Further, when presented an opportunity for treatment, Haws failed to adequately participate in his treatment or demonstrate that he had changed the behavior that had previously led him to frequently commit crime.

Haws is asking this Court to reweigh evidence regarding Haws' mental illnesses and how that evidence impacted his performance during the period of retained jurisdiction. This Court will not overturn a district court's factual findings regarding aggravating and mitigating factors unless those decisions are clearly erroneous. *See Bodenbach*, 165 Idaho at 592, 448 P.3d at 1020. Here, the district court adequately considered these concerns and exercised reason in deciding to relinquish jurisdiction. Accordingly, the district court did not err in relinquishing jurisdiction, and we affirm its decision to do so.

## IV. CONCLUSION

For the foregoing reasons, Haws' appeal from the sentences imposed is dismissed. Further, the district court's decision to relinquish jurisdiction over Haws is affirmed.

Chief Justice BURDICK, Justices BRODY, BEVAN and TROUT, J. Pro Tem, CONCUR.

13