Argued and submitted November 10, 1986, reversed and remanded on negligence claim, otherwise affirmed February 25, Arena's reconsideration and Gingrich's reconsideration denied May 8, both petitions for review allowed June 2, 1987 (303 Or 483)

**ARENA,**
*Appellant,*

*v.*

**GINGRICH,**
*Respondent.*

**(A8306-03487; CA A36593)**

733 P2d 75

David Gernant, Portland, argued the cause for appellant. With him on the briefs were James E. Redman, Milwaukie, and Nick Chaivoe, Portland.

Thomas E. Cooney, Portland, argued the cause for respondent. With him on the brief were Connie K. Elkins and Cooney, Crew & Wihtol, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

Deits, J., dissenting.

## RICHARDSON, P. J.

Plaintiff appeals from a judgment entered on a jury verdict for defendant Gingrich[1] in this medical malpractice action. Defendant performed surgery on plaintiff for a hiatal hernia. There are three standard surgical procedures for that condition, two of which entail wrapping and suturing a portion of the stomach to the esophagus. The third involves implacement of an artificial device, known as an Anchelchik ring, at the base of the esophagus. Defendant used the third procedure; however, he advised plaintiff only about the first two before the surgery and before she gave her consent to it. Plaintiff contends that defendant proceeded without her informed consent and was professionally negligent and committed a battery by so doing. Plaintiff maintains that she suffered psychological damage and felt "violated" and that she had been used as a "guinea pig."

The principal issue in connection with the negligence claim is whether the proper test for determining if a patient would have consented to a procedure, notwithstanding a physician's nondisclosure of material alternatives or risks, is subjective, *i.e.,* whether the particular patient would in fact have consented, or objective, *i.e.,*whether a prudent person in the patient's position would do so. Plaintiff takes the former view; defendant takes, and the trial court took, the latter, and plaintiff assigns error, *inter alia,* to the court's instruction reflecting that view. We do not agree fully with either party's argument, but we do agree that the instruction was incorrect, and we reverse and remand on the negligence claim.[2]

Two of the questions which arise in cases where a patient alleges that a physician or other health practitioner

---

[1] The action was dismissed as to the other defendants.

[2] The instruction was:

"Now, with respect to the plaintiff's allegation that the defendant failed to obtain informed consent, I instruct you that if you find that a prudent person in the plaintiff's position would have consented to the procedure, even if she had been fully advised in substantial detail of all the material risks, then the alleged failure to advise plaintiff of the risks would not be the legal cause of any injury."

Plaintiff also contends that the court's legal theory led it erroneously to deny her motions for a directed verdict and for a new trial on her negligence claim. We do not agree that a verdict should have been directed, and our disposition renders the ruling on the latter motion academic.

failed to obtain the patient's informed consent to a diagnostic or therapeutic procedure are what information the practitioner must disclose to the patient and whether failure to make a necessary disclosure "caused" the patient's consent, in the sense that the patient in fact consented but would not have had the disclosure been made. The Oregon Supreme Court has answered the first question, holding that the duty to disclose a risk of or an alternative to a mode of treatment depends on its materiality. *Getchell v. Mansfield,* 260 Or 174, 181, 489 P2d 953 (1971). Materiality is to be ascertained by reference to whether

> " 'a reasonable person, in what the physician knows or should know to be the patient's position, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to undergo the proposed therapy.' " *Holland v. Srs. of St. Joseph, Seeley,* 270 Or 129, 137, 522 P2d 208, 526 P2d 577 (1974), quoting Waltz & Scheuneman, "Informed Consent to Therapy," 64 NW L Rev 638, 640 (1969).[3]

No issue is presented *in this appeal* about whether defendant's nondisclosure was material or whether a reasonable patient would be likely to attach significance to the undisclosed information. The parties' concern here is with the

---

[3] After the decisions in *Getchell* and *Holland,* the legislature enacted ORS 677.097, which provides:

"(1) In order to obtain the informed consent of a patient, a physician or podiatrist shall explain the following:

"(a) In general terms the procedure or treatment to be undertaken;

"(b) That there may be alternative procedures or methods of treatment, if any; and

"(c) That there are risks, if any, to the procedure or treatment.

"(2) After giving the explanation specified in subsection (1) of this section, the physician or podiatrist shall ask the patient if the patient wants a more detailed explanation. If the patient requests further explanation, the physician or podiatrist shall disclose in substantial detail the procedure, the viable alternatives and the material risks unless to do so would be materially detrimental to the patient. In determining that further explanation would be materially detrimental the physician or podiatrist shall give due consideration to the standards of practice of reasonable medical or podiatric practitioners in the same or a similar community under the same or similar circumstances."

The statute does not attenuate *Getchell* or *Holland* in any way relevant here. *See Tiedemann v. Radiation Therapy Consultants,* 299 Or 238, 701 P2d 440 (1985). Moreover, the text of the statute does not assist in answering the informed consent question presented here.

For reasons unrelated to its conclusions on the merits in *Holland,* the Supreme Court withdrew its opinion on rehearing.

second question which we have described, and that question has not been answered by Oregon's appellate courts. Both parties rely on cases from other jurisdictions to support their positions. *Canterbury v. Spence,* 464 F2d 772 (DC Cir), *cert den* 409 US 1064 (1972), and *Cobbs v. Grant,* 8 Cal 3d 229, 104 Cal Rptr 505, 502 P2d 1 (1972), are representative of the cases on which defendant relies. The court said in *Cobbs:*

> "There must be a causal relationship between the physician's failure to inform and the injury to the plaintiff. Such causal connection arises only if it is established that had revelation been made consent to treatment would not have been given. Here the record discloses no testimony that had plaintiff been informed of the risks of surgery he would not have consented to the operation. * * *
>
> "The patient-plaintiff may testify on this subject but the issue extends beyond his credibility. Since at the time of trial the uncommunicated hazard has materialized, it would be surprising if the patient-plaintiff did not claim that had he been informed of the dangers he would have declined treatment. Subjectively he may believe so, with the 20/20 vision of hindsight, but we doubt that justice will be served by placing the physician in jeopardy of the patient's bitterness and disillusionment. Thus an objective test is preferable: i.e., what would a prudent person in the patient's position have decided if adequately informed of all significant perils." 8 Cal 3d at 245. (Citations omitted.)[4]

*Scott v. Bradford,* 606 P2d 554 (Okla 1979), exemplifies plaintiff's authority:

> "The court in *Canterbury v. Spence, supra,* although emphasizing principles of self-determination permits liability only if non-disclosure would have affected the decision of a fictitious 'reasonable patient,' even though actual patient testifies he would have elected to forego therapy had he been fully informed.
>
> "Decisions discussing informed consent have emphasized the *disclosure* element but paid scant attention to the consent element of the concept, although this is the root of causation. Language in some decisions suggest the standard to be applied is a subjective one, i. e., whether that particular patient would

---

[4] *Canterbury* and *Cobbs,* like *Holland,* make materiality to the patient's decision the standard for determining the risks and alternatives which the practitioner must disclose.

still have consented to the treatment, reasonable choice or otherwise. * * *

"Although the *Canterbury* rule is probably that of the majority, its 'reasonable man' approach has been criticized by some commentators as backtracking on its own theory of self-determination. The *Canterbury* view certainly severely limits the protection granted an injured patient. To the extent the plaintiff, given an adequate disclosure, would have *declined* the proposed treatment, and a reasonable person in similar circumstances would have consented, a patient's right of self-determination is *irrevocably lost.* This basic right to know and decide is the reason for the full-disclosure rule. Accordingly, we decline to jeopardize this right by the imposition of the 'reasonable man' standard.

"If a plaintiff testifies he would have continued with the proposed treatment had he been adequately informed, the trial is over under either the subjective or objective approach. If he testifies he would not, then the causation problem must be resolved by examining the credibility of plaintiff's testimony. The jury must be instructed that it must find plaintiff would have refused the treatment if he is to prevail.

"Although it might be said this approach places a physician at the mercy of a patient's hindsight, a careful practitioner can always protect himself by insuring that he had adequately informed each patient he treats. If he does not breach this duty, a causation problem will not arise." 606 P2d at 558-59. (Citations and footnotes omitted; emphasis in original.)

There are several difficulties with the "objective" or "reasonable person" test of causation. In the first place, the test is at least anomalous, and it may turn the inquiry on its head: if it is the individual patient's right to consent to or reject a procedure, a reasonable or prudent person standard cannot be the proper focus, because the individual is not required to exercise the right in a reasonable or prudent way. A competent adult is free to refuse treatment which the average reasonable person would be highly likely to undergo and which other competent adults might consider it imprudent to forego.

There are analytical as well as philosophical problems with the objective test. As noted, the standard for *disclosure* is whether the risk or alternative would be material to a reasonable patient's decision. That being so, whether a

hypothetical reasonable patient's consent was *caused by* the *nondisclosure* of a particular material fact is either a self-answering question or an unanswerable one. It is circular to say both that a fact can be material to a reasonable person's decision and that the person would have made the same decision whether or not the person was aware of the fact.

However, the most fundamental problem with the objective test is that it poses the wrong question to the fact-finder. Whether a defendant's negligence caused a plaintiff's injury is, by its nature, a case-specific question. We are aware of no other context in which it has been suggested that the jury should resolve a question of causation on the basis of a hypothetical effect that a hypothetical defendant's act is likely to have on a hypothetical plaintiff, rather than base its decision on whether the actual defendant's act was the cause of harm to the actual plaintiff.

Stated succinctly, the objective causation test espoused by defendant and the courts on whose decisions he relies makes no sense to us. The only rationale the court offered for the test in *Cobbs* was that a plaintiff's testimony about the subjective fact is likely to be colored by the events that occurred after he consented and will, *ipso facto,* be highly adverse to the defendant. Although that is true, it is not unique. Many kinds of information relevant to the determination of liability in tort cases are peculiarly within the plaintiff's knowledge. Juries are aware that a party's testimony which favors his own cause must be weighed carefully and that credibility determinations must be made. We do not think that it is necessary to present the jury with a hypothetical question rather than the real one in order to protect the fact-finding process, nor do we think that presenting hypothetical questions is consistent with what the factfinding process exists to achieve.

The real question is whether *this* plaintiff would have consented if she had been properly informed. Although that subjective question is the ultimate one, we do not agree with plaintiff's and the *Scott* court's view that *only* evidence about the particular plaintiff's subjective reactions and decision can be relevant to that question. Evidence and arguments about whether other patients—hypothetical or real—would have

consented under similar circumstances can assist the fact-finder in evaluating the plaintiff's credibility and in exercising its common sense. The question that the jury must answer is whether the plaintiff would *in fact* have withheld consent if apprised of the undisclosed information, but the jury may consider, in deciding that question and in weighing the plaintiff's credibility, the likelihood that a competent and prudent person would make the decision which the plaintiff claims that he would have made. Although a patient's decision to give or refuse consent need not be an objectively reasonable one, the trier of fact is entitled to consider its perception of the reasonableness of a decision as one of the factors bearing on what the plaintiff in the given case would have decided. In short, that the *test* is subjective does not mean, as plaintiff appears to advocate and the courts in *Cobbs* and like cases appear to have feared, that the only permissible determinants are the plaintiff's testimony and other evidence that pertains directly to the plaintiff's subjective choice.

■     Because we reject the "objective test" of causation on which the trial court's instruction was based, a remand on the negligence claim is necessary. Plaintiff raises three other issues. The first, concerning purportedly improper communications by the bailiff to the jury, requires neither reversal nor discussion. Plaintiff next contends that the court erred by denying her motion for a new trial on her battery claim. The motion was made on the ground that there was insufficient evidence to justify the verdict. ORCP 64B(5). Plaintiff acknowledges that she did not move for a directed verdict on the battery claim, but she contends that a motion is not required as a condition precedent to a new trial under ORCP 64B(5). She is incorrect. *See Barrett v. Warrington,* 60 Or App 406, 653 P2d 1020 (1982).

Plaintiff's final contention, that the court erred by striking her prayer for punitive damages in connection with the battery claim, is disposed of by our affirmance of the portion of the judgment holding that defendant is not liable on that claim.

Reversed and remanded on the negligence claim; otherwise affirmed.

**DEITS, J.,** dissenting.

Because I disagree with the "subjective" test adopted by the majority, I dissent. I believe that the better test is the "objective" test, which focuses on whether a reasonable person in the patient's position would have submitted to the medical procedure or treatment if fully and adequately apprised of the risks.

The question of whether a medical practitioner's failure to disclose material information caused the patient to consent is difficult. It is asked only when the purpose for informed consent—allowing the individual, no matter what fears, superstitions, apprehensions or beliefs may be held, to make decisions, no matter how reasonable or unreasonable, concerning the medical treatment to be received—has not been achieved. It requires the factfinder to look backward in an attempt to determine if consent would have been given had the missing information been disclosed. No matter whether the "objective" or "subjective" standard is used, the result is unsatisfactory. The patient's ability to decide the course of treatment is irrevocably lost.

The majority adopts the "subjective" standard after discussing what it views as major flaws in the "objective" standard. The majority concludes that it "is circular to say both that a fact can be material to a reasonable person's decision and that the person would have made the same decision whether or not he was aware of the fact." 84 Or App at 31. A fact is material if a reasonable person would consider it significant "in deciding whether or not to undergo the proposed therapy." *Holland v. Srs. of St. Joseph, Seely,* 270 Or 129, 137, 522 P2d 208, 526 P2d 577 (1974). A fact not disclosed could be significant in that a reasonable patient would seriously weigh it in determining whether to undergo the treatment, yet still ultimately choose to submit to the treatment.

The majority also concludes that the most fundamental problem with the objective test is that

> "the jury should resolve a question of causation on the basis of a hypothetical effect that a hypothetical defendant's act is likely to have on a hypothetical plaintiff, rather than basing its decision on whether the actual defendant's act was the cause of harm to the actual plaintiff." 84 Or App at 31.

Unfortunately, the subjective test presents the same problem in that the question of whether the particular patient would have refused the treatment had the risks been known is also purely hypothetical. There is the strong likelihood that the plaintiff's assessment of whether consent would have been given will be skewed because of the bitterness and disillusionment caused by the damage which occurred.

It is my opinion that the "objective" standard provides the fairest and most accurate assessment of whether the failure to disclose caused the patient to consent. As acknowledged in the authority relied upon by the majority, most jurisdictions that have considered the issue have also so concluded. This standard focuses on what a reasonable person would have done with full information. However, under the objective standard the patient's thoughts about consent are not disregarded. Because the test requires the factfinder to determine whether a reasonable person *in the patient's position or circumstance* would have consented, the patient's fears, apprehensions, superstitions, beliefs, and other individual circumstances are relevant, but not controlling.

Because the "objective" test is the preferable method of determining whether the failure to disclose caused consent, the instruction that was given was correct. I would affirm.