805 P.2d 452

**Joe and Carol Joy SHERWOOD, husband and wife, Plaintiffs–Appellants,**

v.

**Stephen CARTER, M.D., Defendant–Respondent.**

**No. 18003.**

Supreme Court of Idaho, Idaho Falls, May 1990 Term.

Jan. 24, 1991.

May & May Law Offices, Twin Falls, for plaintiffs-appellants. Thomas D. Kershaw, Jr. argued.

Thomsen & Stephens, Idaho Falls, for defendant-respondent. J. Michael Wheiler argued.

BOYLE, Justice.

In this medical malpractice action we are called upon to determine whether the jury instructions adequately framed the issues and properly stated the law of informed consent.

Plaintiffs-appellants, Joe and Carol Sherwood, initially filed a medical malpractice action against the defendant-respondent, Stephen J. Carter, M.D. However, after a series of pre-trial motions and amendments to the pleadings, the only issue remaining at trial was whether Dr. Carter had adequately informed the plaintiff concerning the risks involved in performing a biopsy of her lymph nodes. Mrs. Sherwood alleged she suffered damage to a spinal accessory nerve during the biopsy procedure. The jury returned a general verdict in favor of the defendant. The plaintiffs moved for judgment notwithstanding the verdict or in the alternative, a new trial, both of which were denied by the trial court. The plaintiffs appeal the jury verdict and the trial court's denial of their post-trial motions based primarily on alleged error in the jury instructions. After reviewing the record and considering the provisions of I.C. § 39–4304, we affirm.

## I.

### Facts and Proceedings

Dr. Carter first saw Carol Sherwood in August, 1980. At that time, Dr. Carter diagnosed a lump found in her left breast

as being cancerous. The lump had existed for approximately two and one-half years prior to Mrs. Sherwood seeking medical treatment. Dr. Carter performed a modified radical mastectomy and then referred her to Dr. Michael Huntington, an oncologist, for chemotherapy.

A few months after the mastectomy, Mrs. Sherwood saw Dr. Roger Tall, a urologist, for an unrelated surgical procedure. Dr. Tall discovered and removed a small nodule located on the left side of her neck above the clavicle. A biopsy was performed which showed that the nodule was cancerous. In July 1981, approximately one year after Mrs. Sherwood's mastectomy, she again saw Dr. Tall and reported the existence of a lump located under the previous biopsy site. Dr. Tall referred Mrs. Sherwood to Dr. Carter who recommended a biopsy and chemotherapy. A biopsy was scheduled and cancelled twice during the month of August, 1981 during which time Mrs. Sherwood underwent naturopathic treatment.

The record indicates that Dr. Carter's next contact with Mrs. Sherwood was on September 6, 1984, when she came to his office complaining of a large ulcerated sore on the back of her head, shooting pains radiating to the side of her head, a cough and congestion in her chest. At this time Dr. Carter discovered three or four enlarged lymph nodes in Mrs. Sherwood's neck which according to her, had been present for several years. Dr. Carter recommended several diagnostic procedures and told Mrs. Sherwood that the sore was probably a further spread of her cancer and was potentially life threatening. Dr. Carter recommended radiation therapy and a biopsy of the scalp lesion and of the lymph nodes. Mrs. Sherwood agreed to the surgery and signed a consent form.

The biopsy procedure was performed on September 19, 1984, and in the first week following the surgery Mrs. Sherwood expressed no complaint of shoulder pain or any other problems with her shoulder other than the usual swelling associated with surgery. Dr. Carter next saw Mrs. Sherwood on November 13, 1984, at which time she complained of stiffness in her left shoulder. Upon examination, the record indicates Dr. Carter found nothing abnormal. Shoulder x-rays were taken by Dr. Thomas Setter, an orthopedic surgeon, who advised her that the stiffness was probably caused by tendonitis due to immobilization. Mrs. Sherwood then had Dr. Clark Jaynes, a neurologist, administer several diagnostic tests, including an electromyogram. The electromyogram revealed no denervation in the muscles which, according to the testimony of Dr. Jaynes, would have been present had Dr. Carter severed the spinal accessory nerve as alleged by Mrs. Sherwood.

Mrs. Sherwood's initial complaint on file with the district court alleged that Dr. Carter negligently performed the biopsy and in doing so damaged certain nerves. An amended complaint added a claim alleging failure of informed consent. Dr. Carter was granted a partial summary judgment on the issue of negligence and the only issue remaining at trial was whether Mrs. Sherwood was adequately informed of the attendant risks associated with performing the biopsy prior to giving Dr. Carter consent to perform the surgical procedure. The jury returned a general verdict in favor of Dr. Carter.

In this appeal, Mrs. Sherwood asserts that the jury instructions did not present a correct or coherent version of the law of informed consent upon which to consider the facts of this case. As a result Mrs. Sherwood argues that the trial court committed reversible error and she is entitled to a new trial. First, Mrs. Sherwood argues the trial court improperly failed to instruct the jury concerning the elements of the plaintiff's prima facia case and the applicable burden of proof. Secondly, she asserts that the trial court erred when it instructed the jury that it must consider what a "reasonable person" would have done in the plaintiff's position. Thirdly, she argues that the trial court erred by giving one instruction which stated that the defendant was to be held to the standard of care of physicians practicing in the "same or like community," and another instruction which stated that the defendant was to

be held to the standard of care of physicians practicing in the "same community." The fourth alleged error is that the trial court failed to instruct the jury on the "patient-based" theory of informed consent.

## II.

### Informed Consent

It must be kept in mind that the issue of informed consent is governed by I.C. § 39–4304. In addition to analyzing I.C. § 39–4304, we will review existing case law from Idaho and other jurisdictions in an effort to clarify the law on the issue of informed consent. In the instant case it is evident from both parties' briefs and our review of the current state of the law that there is considerable need to clarify Idaho law concerning the issue of informed consent.

■ Ordinarily, the liability of a physician for damages for injuries suffered by a patient in the course of treatment administered by the physician is predicated on the failure of the physician to exercise due care in performing such treatment. 61 Am. Jur.2d *Physicians, Surgeons, Etc.* § 174, p. 305. However, a physician may also be held liable in some circumstances even though the physician is free from personal negligence in the actual *treatment* of the patient. *Id.; Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972) (doctrine of informed consent implies a duty which is completely separate and distinct from his responsibility to skillfully diagnose and treat the patient's ills). This would be the case in a situation where the physician treats a patient without the latter's consent or beyond the scope of the consent given, or where the physician fails to inform the patient of the risks of a particular treatment thus preventing the patient from making an informed decision as to whether he or she is willing to undergo the proposed treatment. *Id.; see Bloskas v. Murray*, 646 P.2d 907 (Colo.1982) (where patient consents to surgical procedure but is uninformed about the risks of surgery, physician may be liable in damages resulting from patient's lack of informed consent

to surgery); *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972). Hence the doctrine of informed consent is the general principle of law that a physician has a duty to disclose to his patient those risks of injury which might result from a proposed course of treatment. *Le-Pelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980); *Smith v. Shannon*, 100 Wash.2d 26, 666 P.2d 351 (1983); *see Wozniak v. Lipoff*, 242 Kan. 583, 750 P.2d 971 (1988); *Nixdorf v. Hicken*, 612 P.2d 348 (Utah 1980).

The sufficiency of informed consent is expressly governed by Idaho statutes. Idaho Code § 39–4304 states:

> **Sufficiency of consent.**—Consent for the furnishing of hospital, medical, dental or surgical care, treatment or procedures shall be valid in all respects if the person giving it is sufficiently aware of pertinent facts respecting the need for, the nature of and the significant risks ordinarily attendant upon such a patient receiving such care, as to permit the giving or withholding of such consent to be a reasonably informed decision. Any such consent shall be deemed valid and so informed if the physician or dentist to whom it is given or by whom it is secured has made such disclosures and given such advice respecting pertinent facts and considerations as would ordinarily be made and given under the same or similar circumstances, by a like physician or dentist of good standing practicing in the same community. As used in this section, the term "in the same community" refers to that geographical area ordinarily served by the licensed general hospital at or nearest to which such consent is given.

The most recent Idaho case addressing the issue of informed consent is *Rook v. Trout*, 113 Idaho 652, 747 P.2d 61 (1987). In *Rook*, this Court held that the first two sentences in I.C. § 39–4304 set forth two "alternative defenses" to a claim of lack of informed consent. Specifically, the Court stated:

> The first [sentence] is a codification of the "material information" patient-based

standard of disclosure which this Court adopted in *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980).... The second, which is found in the second sentence of section 39–4304, grounds the level of disclosure in the then-existing standard of medical care practiced in the community....

113 Idaho at 656, 747 P.2d at 65.

The above cited language has created substantial confusion among the members of the trial bench and bar as a result of what appears to be two inconsistent standards, *i.e.*, "patient-based" versus a "physician-based" standard of disclosure. With regard to the doctrine of informed consent, there is a wide divergence of views as to the general measure of the physician's duty to disclose. *See* Annot. *Modern Status of Views as to General Measure of Physician's Duty to Inform Patient of Risks of Proposed Treatment*, 88 A.L.R.3d 1008 (1978); *see also* 61 Am.Jur.2d *Physicians, Surgeons, Etc.* § 188 p. 319. Most jurisdictions hold that the duty to properly inform the patient is measured by a professional medical standard, *i.e.*, either the customary disclosure practices of physicians [1] or what a reasonable physician would disclose under the same or similar circumstances.[2] Some jurisdictions, however, have recently taken a position which is based on the patient's right to self-determination. In these jurisdictions the scope of a physician's duty to disclose risks and alternatives is governed by the individual patient's personal subjective needs. It has been stated that the appropriate test under this theory is not what the physician in the exercise of his medical judgment thinks a patient should know regarding the treatment, rather the focus is on what information the individual patient personally requires in order to make an intelligent decision. Annot. 88 A.L.R.3d 1008 (1978); *see also* 61 Am.Jur.2d *Physicians, Surgeons, Etc.* § 189, p. 320.[3]

In *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980), a case where summary judgment had been granted in favor of the physician, this Court stated that it adopted the analysis which the California Supreme Court announced in the case of *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972). In *Cobbs*, in the absence of an informed consent statute to interpret or apply to the facts of that case, the California Supreme Court discussed the standard of disclosure required of physicians to enable a patient to make an informed consent to medical treatment. With regard to complicated procedures that may involve death or serious bodily harm, the California court held:

1. *Coleman v. Garrison*, 327 A.2d 757 (Del.1974) (whether a physician or surgeon is under a duty to warn a patient of the possibility of a specific adverse result of a proposed treatment depends upon the circumstances of a particular case and the general practice with respect to such cases followed by the medical profession in the locality); *Stauffer v. Karabin*, 30 Colo.App. 357, 492 P.2d 862 (1971) (since the extent of disclosure of risks involved in medical procedure is a medical judgment, a showing that nondisclosure of certain facts complies with the community standard is a valid defense).

2. *Charley v. Cameron*, 215 Kan. 750, 528 P.2d 1205 (1974) (where disclosures of possible results of medical or surgical procedures have been made to a patient and are ascertainable, expert medical testimony is ordinarily necessary to establish that they were insufficient to accord with disclosures made by reasonable medical practitioners under the same or like circumstances; what is reasonable disclosure of possible results of medical or surgical procedures upon which an informed consent may rest depends upon the facts and circumstances of each case); *Ditlow v. Kaplan*, 181 So.2d 226 (Fla.App. 1965) (in cases involving informed consent, the standard to be applied is whether, according to expert testimony, a reasonable medical practitioner in the community would make such a disclosure under the same or similar circumstances).

3. *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972) (physician's duty to inform patient is measured by the patient's need, and test of need is materiality to decision; thus test of whether potential peril must be divulged by physician to patient is its materiality to patient's decision.); *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972) (requirement that patient obtain expert to evaluate physician's disclosures made in light of prevailing practice in locality undermines very basis of informed consent theory; patient's right to make up his mind whether to undergo treatment should not be delegated to local medical group and what is reasonable disclosure in one instance may not be reasonable in another).

[A] medical doctor has a duty to disclose to his patient the potential of death or serious harm, and to explain in lay terms the complications that might possibly occur. Beyond the foregoing minimal disclosure, a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances.

In sum, the patient's right of self-decision is the measure of the physician's duty to reveal. That right can be effectively exercised only if the patient possesses adequate information to enable an intelligent choice. The scope of the physician's communications to the patient, then, must be measured by the patient's need, and that need is whatever information is material to the decision. Thus the test for determining whether a potential peril must be divulged is its materiality to the patient's decision. (Citations omitted.)

104 Cal.Rptr. at 515, 502 P.2d at 11.

In *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972), the California court adopted the patient-based approach with regard to the standard of disclosure imposed upon a medical practitioner. As previously stated, this Court, in *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980), made a broad statement that it adopted the analysis set forth in *Cobbs*. However, upon a careful reading of *LePelley*, it is apparent that this Court did not adopt the *Cobbs* analysis in its entirety. Rather, the Court in *LePelley* merely adopted a single paragraph from the *Cobbs* decision, and at the same time, held that the professional medical standard for disclosure was applicable. Specifically, a close and careful analysis of *LePelley* and *Rook* reveals this Court followed *Cobbs* only with regard to the following language:

Therefore, we hold, as an integral part of a physician's overall obligation to the patient, there is a duty of *reasonable disclosure* of the available choices with respect to proposed therapy and of the dangers inherent and potentially involved in each.

*LePelley v. Grefenson*, 101 Idaho at 429, 614 P.2d at 969. This Court then stated,

The court in *Cobbs* went on to discuss the amount of disclosure that should be given to a patient and in summary adopted as a rule of disclosure the medical community standard for general procedures, but when relatively complicated surgery is involved, a doctor must, in addition, disclose known risks of death or serious bodily injury.

*Id.* 101 Idaho at 429, 614 P.2d at 969. This latter sentence from *LePelley* is a misstatement of the *Cobbs* decision holding which, for the most part, rejects the medical community standard in favor of the patient-based standard. The California court in *Cobbs* adopted the position that the scope of the physician's communication to the patient must be measured by the patient's need. *Cobbs v. Grant*, 104 Cal.Rptr. at 515, 502 P.2d at 11. The *Cobbs* decision follows the medical community standard to the extent that a physician may, as a defense to a claim of lack of informed consent, assert that a disclosure need not be made beyond that required within the medical community when a doctor can prove that the disclosure would have seriously upset the patient and would not have allowed the patient to dispassionately weigh the risks involved in undergoing the recommended treatment. *Id.* 104 Cal.Rptr. at 516, 502 P.2d at 12.

In *LePelley v. Grefenson* the trial court's entry of summary judgment in favor of the defendant physician was reversed because genuine issues of material fact existed. In *LePelley*, a case in which the informed consent statute contained in I.C. § 39-4301 did not apply, this Court expressly adopted the common law "patient-based" standard in informed consent cases from *Cobbs v. Grant*. Citing to *Riedinger v. Colburn*, 361 F.Supp. 1073, 1076–77 (D.C.Idaho 1973), a United States District Court case which also preceded the 1975 informed consent legislation, the Court in *LePelley* referred to the analysis contained in *Cobbs v. Grant* and generally stated, "... which we also adopt." 101 Idaho 422, 429, 614 P.2d 962, 969. For

those cases arising prior to the enactment of the Idaho informed consent legislation contained in I.C. § 39–4301, the common law rule cited in *Cobbs v. Grant* and adopted in *LePelley v. Grefenson* is appropriate.

However, in 1975 the Idaho legislature enacted the medical consent law contained in I.C. § 39–4301 which significantly changes the complexion of our analysis of the informed consent issue in the instant case.

In *LePelley*, this Court was not considering the case in light of the statute and thus was at liberty to adopt the common law rule of *Cobbs v. Grant*. However, *Rook v. Trout* was clearly subject to the provisions of I.C. § 39–4304 and should have been analyzed with regard to the statute rather than under the common law rule established in *LePelley v. Grefenson* as adopted from California's *Cobbs v. Grant* case.

Hence, because we have a clear, express and unequivocal legislative directive, I.C. § 39–4304, stating the law of informed consent, we must look directly to the language of the Idaho statute to resolve the issue. We cannot continue to be controlled by the common law adoption in *LePelley v. Grefenson*, or to be bound by the analysis of another state's court which did not have an informed consent statute to interpret or apply.

### A. Statutory Construction Standards

■ It is a basic rule of statutory construction that, unless the result is palpably absurd, we must assume that the legislature means what is clearly stated in the statute. *Miller v. State*, 110 Idaho 298, 715 P.2d 968 (1986); *State Dep't of Law Enforcement v. One 1955 Willys Jeep*, 100 Idaho 150, 158, 595 P.2d 299, 302 (1979); *Worley Highway Dist. v. Kootenai County*, 98 Idaho 925, 928, 576 P.2d 206, 209 (1978). Statutes must be interpreted to mean what the legislature intended for the statute to mean, *Miller v. State*, 110 Idaho 298, 715 P.2d 968 (1986); *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984); *Gavica v. Hanson*, 101 Idaho 58, 608 P.2d 861 (1980); *Gumprecht*

*v. City of Coeur d'Alene*, 104 Idaho 615, 618, 661 P.2d 1214, 1217 (1983); *Smith v. Department of Employment*, 100 Idaho 520, 522, 602 P.2d 18, 20 (1979), and the statute must be construed as a whole. *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983), *appeal after remand*, 111 Idaho 897, 728 P.2d 1306 (1986); *Sherwood & Roberts, Inc. v. Riplinger*, 103 Idaho 535, 650 P.2d 677 (1982). The clearly expressed intent of our legislature must be given effect and there is no occasion for construction where language of the statute is unambiguous. *Ottesen ex rel. Edwards v. Board of Commr's of Madison County*, 107 Idaho 1099, 695 P.2d 1238 (1985). In construing a statute, the words of the statute must be given their plain, usual and ordinary meaning. *Walker v. Hensley Trucking*, 107 Idaho 572, 691 P.2d 1187 (1984); *State v. Moore*, 111 Idaho 854, 727 P.2d 1282 (Ct.App.1986).

In carefully studying and reviewing our prior decisions we are of the opinion that the interpretation of I.C. § 39–4304 as set forth in *Rook* is contrary to the clear meaning and intent of the express language contained in the statute. It is our opinion that the language of I.C. § 39–4304 clearly and expressly establishes an objective medical-community standard, not a subjective patient-based standard as urged by appellants. The first sentence of I.C. § 39–4304 states that consent to medical treatment is valid if:

> the person giving it is sufficiently aware of pertinent facts respecting the need for, the nature of and the significant risks *ordinarily* attendant upon *such a patient receiving such care* as to permit the giving or withholding of such consent to be a reasonably informed decision. (Emphasis added.)

The word "ordinary," as defined in *Webster's Seventh Collegiate Dictionary* means "routine, normal." *Black's Law Dictionary* (6th ed.) defines "ordinary" as "usual, common, customary, reasonable, not characterized by peculiar or unusual circumstances." *Webster's Seventh Collegiate Dictionary* defines "ordinarily" as "in an ordinary manner or to an ordinary

degree." The word "such" is defined as "of the same class, type or sort: similar." Applying the ordinary and usual meanings of the words used in I.C. § 39–4304, the phrase "such a patient" can logically and reasonably be interpreted to mean a patient within the class of similarly situated patients. As such, the language in the first sentence of I.C. § 39–4304 can logically be interpreted as creating an objective standard of disclosure based on reasonableness with regard to patients who are similarly situated. To interpret the language in the first sentence to be a subjective "patient-based" standard of disclosure is contrary to the ordinary, common and usual meaning of the words used. Furthermore, and perhaps more important, interpretation of the first sentence as creating a "patient-based" subjective standard clearly conflicts with the express language contained in the second sentence of I.C. § 39–4304.

The second sentence of I.C. § 39–4304 sets forth the standard for determining what are the pertinent facts that should ordinarily be disclosed in order to allow a patient to make a reasonably informed decision. The language in the second sentence states that consent is valid if the disclosure of the pertinent facts are those that,

would *ordinarily* be made and given under the *same or similar* circumstances, by a *like physician* or dentist of good standing practicing in the *same community*. (Emphasis added.)

As defined previously, the word "ordinarily" as used in the second sentence of I.C. § 39–4304, indicates those disclosures that are customarily or reasonably made in "same or similar" circumstances by a physician practicing in the "same community." Hence, the only logical and reasonable interpretation of the language contained in I.C. § 39–4304 is to interpret the statute as creating an objective, professional medical standard for disclosure. To construe the two sentences separately, interpreting the first sentence as establishing a "patient-based" standard of disclosure, ignores the express language of the statute which defines the necessary degree of disclosure as being the same as that which a "like physician" in the "same community" would ordi-

narily disclose. Accordingly, we hold that I.C. § 39–4304 mandates an objective, professional medical standard for disclosure in informed consent cases.

## B. Standard For Application of Stare Decisis

We acknowledge that *Rook v. Trout* is of recent origin having been decided by this Court in 1987. We, like those who preceded us, have struggled with the prospect of overruling such recent case law. Perhaps the most concise statement from this Court on reexamining prior precedents is contained in *Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970), where the Court held:

The court in the proper performance of its judicial function is required to examine its prior precedents. When precedent is examined in light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its proper function.

Stare decisis is not a confining phenomenon but rather a principle of law. And when the application of this principle will not result in justice, it is evident that the doctrine is not properly applicable.

*Id.* 93 Idaho at 801, 473 P.2d at 943.

While we are cognizant of the importance *stare decisis* and precedent plays in the judicial process, we are not hesitant to reverse ourselves when a doctrine, a defense or a holding of a prior case has proven over time to be unjust or unwise. *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985). It is likewise well established in this jurisdiction that the rule of *stare decisis*—the principle that a question once deliberately examined and decided should be considered settled—applies, unless that rule of law is demonstrably made to appear manifestly wrong or overruling it is necessary to vindicate plain, obvious principles of law. *State v. Guzman*, Idaho (1990), #17716, Slip op. #52, November

**256**

19, 1990; *Scott v. Gossett*, 66 Idaho 329, 158 P.2d 804 (1945).

We have stated frequently that we will not follow prior incorrect decisions merely because the cases exist. The rule to stand by decided cases and to maintain former adjudications contemplates more than blindly following a former decision even if it is manifestly wrong. *Bethke v. Idaho Sav. & Loan Assoc.*, 93 Idaho 410, 462 P.2d 503 (1969); *Higer v. Hansen*, 67 Idaho 45, 170 P.2d 411 (1946); *Kerr v. Finch*, 25 Idaho 32, 135 P. 1165 (1913).

Our careful analysis of *Rook v. Trout*, in light of the informed consent statute, pursuades us that the prior decision is manifestly wrong and is clearly inconsistent with the statutory standard for informed consent adopted by the legislature in I.C. § 39–4304.

We therefore overrule those portions of *Rook v. Trout* which held that I.C. § 39–4304 merely provides alternative defenses to a claim of lack of informed consent, and which held that the statute provides for a subjective patient-based standard of disclosure for informed consent. We hold that I.C. § 39–4304 sets forth and requires an objective, medical-community standard for determining whether a patient has been adequately informed prior to giving consent for medical treatment. A valid consent must be preceded by the physician disclosing those pertinent facts to the patient so that he or she is sufficiently aware of the need for, the nature of, and the significant risks ordinarily involved in the treatment to be provided in order that the giving or withholding of consent be a reasonably informed decision. The requisite pertinent facts to be disclosed to the patient are those which would be given by a like physician of good standing practicing in the same community.

### III.

#### The Jury Instructions

Mrs. Sherwood asserts that the trial court, over the objection of both parties, failed to instruct the jury on the elements of the prima facie case for informed con-

sent or to define the burden of proof imposed on the plaintiff.

When reviewing jury instructions on appeal, we are guided by several well-established general rules of construction. On appeal, the review of jury instructions is generally limited to a determination of whether the instructions, when considered as a whole and not individually, fairly and adequately present the issues and state the applicable law. *Roll v. Roll*, 115 Idaho 797, 770 P.2d 806 (1989); *Suitts v. First Sec. Bank of Idaho, N.A.*, 110 Idaho 15, 713 P.2d 1374 (1985); *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983); *Davis v. Bushnell*, 93 Idaho 528, 465 P.2d 652 (1970). If the instructions fairly and adequately present the issues and state the law, then no reversible error is committed. *Suitts v. First Sec. Bank of Idaho, N.A.*, 110 Idaho 15, 713 P.2d 1374 (1985); *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983). An erroneous instruction does not constitute reversible error where the instructions taken as a whole neither mislead nor prejudiced a party. *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985), *see also Hayslip v. George*, 92 Idaho 349, 442 P.2d 759 (1968) (even though instruction providing that negligence was failure to use ordinary care while gross negligence was failure to observe slight care, was perhaps unnecessary in view of other instructions given, its giving was not unfavorable to administratrix of host driver being sued by injured guest, since jury presumably gave due consideration to instructions as a whole rather than isolated portions thereof).

A party is not entitled to have instructions given in the form submitted, but only to have them given in a form which fully and correctly states the issues and the law. *Davis v. Bushnell*, 93 Idaho 528, 465 P.2d 652 (1970); *Jones v. Talbot*, 87 Idaho 498, 394 P.2d 316 (1964). In *Smallwood v. Dick*, 114 Idaho 860, 761 P.2d 1212 (1988), the appellant alleged reversible error where the trial court failed to give the appellant's requested instruction setting forth the elements of a medical malpractice action. This Court held that a combination

of instructions describing the elements was sufficient to inform the jury of the applicable legal standard.

 To establish a claim based on the doctrine of informed consent, a patient must prove three basic elements: nondisclosure, causation and injury. *Smith v. Karen S. Reisig, M.D., Inc.,* 686 P.2d 285 (Okla.1984); *Buzzell v. Libi,* 340 N.W.2d 36 (N.D.1983). In order to show causation, the patient must prove that if he had been informed of the material risks, he would not have consented to the procedure, and that he had been injured as result of submitting to the medical procedure. *Wilkinson v. Vesey,* 110 R.I. 606, 295 A.2d 676 (1972); accord, *Reikes v. Martin,* 471 So.2d 385 (Miss.1985); *Buzzell v. Libi,* 340 N.W.2d 36 (N.D.1983); *Scott v. Bradford,* 606 P.2d 554 (Okla.1979); *Cobbs v. Grant,* 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972);

██ In reviewing the jury instructions in the instant case there was no single instruction given to the jury defining the elements of a prima facie case for informed consent. Instruction Nos. 15, 18, and 21 attempt to explain a physician's duty and what constitutes a breach of that duty under the doctrine of informed consent. Instruction No. 15[4] technically misstates the law as it exists in Idaho by instructing that a physician's disclosures meet the appropriate standard of care if those disclosures conform to those of like physicians of good standing in the *same or like* community.

In *Grimes v. Green,* 113 Idaho 519, 746 P.2d 978 (1987), this Court analyzed the language "same community" as defined in I.C. § 6–1012. The medical malpractice statute, I.C. § 6–1012, and the informed consent statute, I.C. § 39–4304, both define "community" as "that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided." In *Grimes,* the court held that the instruction defining "community" substantially conformed with the mandate of I.C. § 6–1012 and was not erroneous. *Id.* 113 Idaho at 520, 746 P.2d at 979. Likewise, we hold that the addition of "like" community, although not technically correct, substantially complied with the requirements of I.C. § 6–1012 and was not prejudicial to plaintiffs.

██ Instruction No. 21,[5] however, correctly states the standard set forth in I.C. § 39–4304 as being a like physician, under the same or similar circumstances, in the *same community.* On the other hand, Instruction No. 18[6] is taken from *Cobbs v. Grant,* 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972), and states that the scope of the physician's communications to the patient must be measured by the patient's need. Clearly, all three instructions (Nos. 15, 18 and 21) describe a broader standard

4. **Instruction No. 15:** Ordinarily, a physician has a duty to make reasonable disclosure to his patient of all significant facts which, under the circumstances, are necessary to form the basis of an intelligent and informed consent to the proposed treatment and which like physicians of good standing in the same or like community would make under similar circumstances. Based upon such disclosure, the physician must obtain the consent of the patient before treating her.

If you find that the physician failed to obtain such consent, and if you find that any injury proximately resulted from the treatment, then the physician is liable for such damages.

5. **Instruction No. 21:** The law of the State of Idaho also provides that a consent given by a patient for certain health care is deemed valid and informed if the doctor has made such disclosures and given such advice respecting pertinent facts and considerations as would ordinarily be given under the same or similar circumstances by a like physician of good standing in the same community. Both parties have presented evidence on this question. Your burden will be to determine whether it is more probably true than not true that the disclosures given were those that would be given by a like physician of good standing in the same community.

6. **Instruction No. 18:** The patient's right of self-decision in the measure of the physician's duty to reveal. That right can be effectively exercised only if the patient possesses adequate information to enable an intelligent choice. The scope of the physician's communications to the patient, then, must be measured by the patient's need, and that need is whatever information is material to the decision. Thus the test for determining whether a potential peril must be divulged is its materiality to the patient's decision.

for determining the adequacy of the physician's disclosures in obtaining the patient's consent. Mrs. Sherwood argues that the inconsistencies among the three instructions were misleading and constitute reversible error. However, the error in those two instructions was in favor of Mrs. Sherwood. Instruction 15 expanded the standard of disclosure to include *same or like* community as compared to merely the *same* community thus creating a more lenient standard for determining the degree of disclosure imposed upon a physician. The same is true with Instruction 18 which allowed the jury to measure the degree of disclosure by what they perceived to be Mrs. Sherwood's subjective need rather than what a like physician in the same community would have perceived to be necessary disclosures based on a standard determined by the local medical community. In effect, these three instructions expanded or liberalized the Idaho statutory standard of disclosure in favor of plaintiffs from the professional medical standard of the same community to a standard existing in same or like communities and a standard based on a patient's subjective needs. As such, Mrs. Sherwood benefitted from this expanded test rather than being prejudiced. The fact that the instructions did not follow the exact language of I.C. § 6–1012 and erroneously defined "community" for the purpose of determining whether Dr. Carter's disclosures were adequate, those instructions did not result in prejudice to Mrs. Sherwood. Rather, the instructions as given actually benefitted the plaintiffs and still the jury ruled in favor of defendant. Thus no prejudice is shown. Therefore, we hold that the instructions in question, although not technically correct, do not constitute reversible error and a new trial will not be granted on the basis of instructions. *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985); *Hayslip v.*

*George*, 92 Idaho 349, 442 P.2d 759; *Gardner v. Hobbs*, 69 Idaho 288, 206 P.2d 539 (1949).

■ To prove causation in an informed consent action the plaintiff must show by a preponderance of the evidence that the patient would not have given consent to the proposed procedure had a full and adequate disclosure been made at the time consent was originally given. 61 Am. Jur.2d, *Physicians, Surgeons, Etc.* § 197, p. 329 [7]; *see Reikes v. Martin*, 471 So.2d 385 (Miss.1985). In making this determination, the majority of jurisdictions adhere to an objective theory or test which provides what a prudent person in the patient's position would have decided if adequately informed of all significant perils. *Fain v. Smith*, 479 So.2d 1150 (Ala.1985); *Brown v. Dahl*, 41 Wash.App. 565, 705 P.2d 781 (1985); *Kohoutek v. Hafner*, 383 N.W.2d 295 (Minn.1986); *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 477 N.E.2d 1145 (1985); *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972).

Mrs. Sherwood argues that we should adopt a subjective test for determining proximate cause in informed consent cases. Under the subjective test, proximate cause is proven if the plaintiff proves that he or she, as compared to a prudent person in her position, would not have consented to the treatment had she been adequately informed. *Arena v. Gingrich*, 84 Or.App. 25, 733 P.2d 75 (1987). In *Fain v. Smith*, 479 So.2d 1150 (Ala.1985), the Supreme Court of Alabama rejected the subjective standard urged upon us by appellants. In making its decision, the Alabama court considered numerous legal authorities discussing both tests and recited the following analysis from F. Rozovsky, *Consent to Treatment* § 1.13.4, "Causation in Negligent Consent," pp. 62–63 (1984):

---

7. *See, Riedisser v. Nelson*, 111 Ariz. 542, 534 P.2d 1052 (1975) (no damage could be said to have proximately resulted from any failure of surgeon to disclose that development of a utreterovagian fistula was a risk to be incurred in undergoing hysterectomy, unless patient would not have had the operation had the disclosures been made); *Aiken v. Clary*, 396 S.W.2d 668

(Mo.1965); *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972) (in order to prevail in malpractice action, where recovery is based on doctrine of informed consent, patient must prove that if he had been informed of material risks, he would not have consented to procedure and that he had been injured as a result of submitting to procedure.)

As with the standards for disclosure, there are different approaches to the criterion for causality. One point of view emphasizes the unfairness to practitioners involved in gauging what might have happened by what patients say they would have done had the risk information been disclosed. The patient-plaintiffs are thus placed in a unique position and allowed to state in court that, after all is said and done, in retrospect they would not have agreed to treatment. Patients cannot divorce their re-created decision process from hindsight. The same difficulty will trouble triers of fact. No one can really be certain that a patient would have withheld consent at the time if he or she had known the undisclosed facts. Moreover, if the patient should die as a result of the procedure, reliance upon such a test of causality as this would probably preclude recovery altogether.

*Fain v. Smith,* 479 So.2d at 1154–55.

After carefully considering all of the various alternatives available to us and the underlying policies of each, we are persuaded to adopt the objective standard as the fairer test to both the patient and the physician. Applying the objective test is fair to the patient because it requires consideration by the factfinder of what a reasonable person with all of the characteristics of the plaintiff would have done under the same circumstances, *Fain v. Smith,* 479 So.2d 1150 (Ala.1985), and is likewise fair to the physician-defendant because the physician is not placed in jeopardy of the patient's hindsight. *Canterbury v. Spence,* 464 F.2d 772 (D.C.Cir.1972).

As previously stated, the element of proximate cause is proven by showing that a reasonable person would have chosen no treatment or a different course of treatment had he or she been adequately informed by the physician. *Fain v. Smith,* 479 So.2d 1150 (Ala.1985); *Wilkinson v. Vesey,* 110 R.I. 606, 295 A.2d 676 (1972).

Instruction No. 15 states that if the jury finds that the physician failed to obtain an informed consent and that the injury resulted from the treatment, then the physician is liable for such damages. Instruction No. 15 does not mention that the jury must also find that a reasonable prudent person, who was adequately informed, would have chosen no treatment or a different treatment. Applying the reasonable person test, Instruction No. 17 [8] attempts to define this additional element. It states that the jury should determine the adequacy or shortcomings of Dr. Carter's disclosures and then determine what a reasonably prudent patient would have done given the circumstances of which Mrs. Sherwood had knowledge. Obviously this is not a precise statement of the element of proximate cause as it is defined in the doctrine of informed consent. The language of the instruction is somewhat confusing, and requires one to read the instruction more than once to discern what is intended. However, the legal issue is whether the instructions, when read in combination with all other instructions as a whole, is so misleading as to have prevented a party from having a fair trial. *See generally, Roll v. Roll,* 115 Idaho 797, 770 P.2d 806 (1989); *Hayslip v. George,* 92 Idaho 349, 442 P.2d 759 (1968). All instructions given to a jury should be read and considered as a whole, and where they are not inconsistent but can be reasonably and fairly harmonized, the Supreme Court will assume that the jury gave due consideration to the instructions as a whole rather than to isolated portions thereof. *Roll v. Roll,* 115 Idaho 797, 770 P.2d 806 (1989); *Hayslip v. George,* 92 Idaho 349, 442 P.2d 759 (1968).

When reading all the instructions as a whole, it is clear that the issue presented is whether Mrs. Sherwood was given the opportunity to make an intelligent and informed decision regarding her consent to have the biopsy. Although Instruction No. 17 does not expressly state that the jury must determine whether a reasonable pru-

---

8. **Instruction No. 17:** In measuring Mrs. Sherwood's right of self decision in this case you should judge the adequacy or the shortcomings of the information given by Dr. Carter and then you should determine what a reasonably prudent female would have done given all the circumstances of which she had knowledge without the benefit of hindsight.

dent person would have consented to treatment had she been adequately informed, it does present the issue of what a reasonable prudent person would have done under the circumstances. This statement is adequate particularly when read with the other instructions and it is our opinion that the jury understood that the instruction was asking whether a reasonable prudent patient who has had a history of cancer and now has several enlarged lymph nodes in her shoulder area and a large ulcerated sore on the back of her head which she was told was probably cancerous, would have consented to biopsy surgery to determine if the enlarged lymph nodes are cancerous. We therefore conclude that Instruction No. 17, although inartfully drafted, is not so misleading to have denied Mrs. Sherwood a fair trial and accordingly it does not constitute reversible error.

■ Instruction No. 16 [9] states that a physician "acquiring informed consent" has a duty to possess and exercise reasonable care and skill as exercised by the members of his profession in good standing, practicing in *"similar* localities." This instruction is technically erroneous for two reasons. First, it again allows for a "similar" community standard as compared to the proper "same" community standard as required by I.C. § 6–1012. Secondly, Instruction No. 16 states the standard of care to be exercised by a physician who is acquiring or who has acquired informed consent. We cannot determine from the instruction whether the "standard of care" referred to in this instruction is in the process of obtaining the patient's consent, or in the medical treatment provided following consent being given. If the reference to the standard of care is directed to the time of obtaining the consent the last sentence of Instruction No. 17 is not necessary but its giving does not constitute reversible error. If the reference to which the physician must comply with the standard of care is during treatment *after* consent has been given, the sentence is irrelevant in an action based solely on informed consent and, although unnecessary, its giving does not constitute reversible error.

We recognize it is well established that an instruction which incorrectly states the law provides grounds for ordering a new trial. I.R.C.P. 59(a)(7); *Everton v. Blair,* 99 Idaho 14, 576 P.2d 585 (1978); *Corey v. Wilson,* 93 Idaho 54, 454 P.2d 951 (1969). Only instructions which are pertinent to the pleadings and the evidence should be given, but where it appears that the giving of the instruction did not result in any substantial injury, though not founded on the issues, the cause will not be reversed. *Patino v. Grigg & Anderson Farms,* 97 Idaho 251, 542 P.2d 1170 (1975); *see Clear v. Marvin,* 86 Idaho 87, 383 P.2d 346 (1963); *Gardner v. Hobbs,* 69 Idaho 288, 206 P.2d 539 (1949); *Evans v. Davidson,* 58 Idaho 600, 77 P.2d 661 (1938); *Asumendi v. Ferguson,* 57 Idaho 450, 65 P.2d 713 (1937).

We do not find that Instruction No. 16 played any significant role in the jury's decision since the issue of the standard of care required in performing the surgery was not at issue or addressed at trial. The giving of an erroneous jury instruction does not generally justify granting of a new trial unless the appellant can establish that he or she was prejudiced thereby, and that the error affected the jury's conclusion. *Luzar v. Western Sur. Co.,* 107 Idaho 693, 692 P.2d 337 (1984); *Packard v. Joint School Dist.,* 104 Idaho 604, 661 P.2d 770 (Ct.App.1983). *See also Walton v. Potlatch Corp.,* 116 Idaho 892, 781 P.2d 229 (1989) (erroneous instructions were grounds for new trial where the special verdict form did not provide insight as to which asserted facts of negligence were the foundation of the verdict); *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985) (failure to instruct on issue of assumption of risk was prejudicial on basis

---

**9. Instruction No. 16:** A physician undertaking the treatment of a patient and acquiring an informed consent of the patient to receive the treatment has a duty to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in similar localities. It is further his duty to use reasonable care, skill and diligence and to use his best judgment in the exercise of his skill and the application for his learning.

that jury may have reached its verdict based on or guided by the erroneous instructions). Since Mrs. Sherwood has not shown any prejudice resulting from the trial court's giving Instruction No. 16, we do not find a basis for reversal.

## IV.

### *Motion For New Trial Denied*

 A general verdict on conflicting evidence presumptively includes a finding of all facts necessary to support it. *Wilson v. Mid–Continent Casualty Co.*, 510 P.2d 274 (Okla.1973); *Lorbeer v. Weatherby*, 190 Kan. 576, 376 P.2d 926 (1962); *see also Bjornstad v. Perry*, 92 Idaho 402, 443 P.2d 999 (1968) (where judgment was properly entered on correct theory and supported by the record, it would not be vacated merely because it may have been rendered upon different or erroneous basis). In the instant case a general verdict was returned by the jury and we therefore may presume that the jury decided all facts necessary to the verdict in favor of Dr. Carter. If the verdict is supported by substantial, competent though conflicting evidence, the verdict will generally be upheld on appeal. *Ellis v. Northwest Fruit & Produce*, 103 Idaho 821, 654 P.2d 914 (1982).

 This same standard is applicable in an appeal from a grant or denial of a motion notwithstanding the verdict. *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974). A motion for a judgment notwithstanding the verdict admits the truth of the adverse evidence and every inference that may be legitimately drawn therefrom. *Id.; Fawcett v. Irby*, 92 Idaho 48, 436 P.2d 714 (1968). A motion notwithstanding the verdict should not be granted when there is substantial competent evidence to support the jury's verdict.

 In the instant case Mrs. Sherwood alleged that a nerve in her shoulder had been severed during the biopsy procedure performed by Dr. Carter. However, Dr. Jaynes, the neurologist, testified that his diagnostic testing revealed no damage to this nerve. The record discloses there was testimony by other expert witnesses corroborating Dr. Jayne's testimony. In order to prevail Mrs. Sherwood must prove that the biopsy surgery caused her injury. Since there was substantial competent medical evidence, albeit conflicting, showing that there was no severance of the nerve, the jury's verdict is supported by the evidence in the record before us.

If we were merely reviewing this case to determine whether there was substantial evidence to support the verdict we would affirm the trial court's denial of Mrs. Sherwood's motion for judgment notwithstanding the verdict on that basis. However, this appeal also includes our review of a denial of motion for a new trial made pursuant to I.R.C.P. 59(a) which entails a different standard of review from that of a motion for a judgment notwithstanding the verdict.

I.R.C.P. 59 sets forth the basis for the granting or denying of a motion for a new trial. This rules provides in pertinent part:

**Rule 59(a). New Trial—Amendment of judgment—Grounds.—**A new trial may be granted to all or any of the parties on all or part of the issues in an action for any of the following reasons:

1. Irregularity in the proceedings of the court, jury or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.

. . . .

7. Error in law, occurring at the trial. . . .

 The trial court has discretion to grant or refuse to grant a new trial, and such discretion will not be disturbed on appeal unless it clearly appears to have been applied unwisely and to have been manifestly abused. *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 766 P.2d 751 (1988); *First Realty & Invest. Co. v. Rubert*, 100 Idaho 493, 600 P.2d 1149 (1979). Except in cases where error affecting the substantial rights of the aggrieved party is so manifest as to entitle that party to a new trial as a matter of right, the trial judge is vested with wide discretion to be exercised wisely in granting or denying a

new trial, and the order of the trial court exercising that discretion will not be disturbed by this Court unless such discretion has clearly and manifestly been abused. *Clear v. Marvin*, 86 Idaho 87, 383 P.2d 346 (1963); *Walker v. Distler*, 78 Idaho 38, 296 P.2d 452 (1956). The trial court has the duty to grant a new trial where prejudicial errors of law have occurred at the trial, even though the verdict of the jury is supported by substantial evidence. *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974).

Having applied the foregoing principles to this appeal, our review of the jury instructions as a whole reveal that all the issues relevant to a claim based on the doctrine of informed consent were adequately presented. Instruction Nos. 15, 18, and 21 dealt with the applicable standard of care and procedure involved in obtaining the patient's consent. The instructions contained several slight misstatements of the statutory language, *i.e.*, addition of "same or like community," rather than "same community," however the error in that language broadened the definition as provided in I.C. § 6–1012 and any error was in favor of Mrs. Sherwood's position in the case. Instruction No. 17 attempted to describe the element of proximate cause as it relates to the doctrine of informed consent. Although the language was not an exact statement of the element of proximate cause, it was a substantially accurate statement of the law that when it was read and considered in conjunction with all the instructions as a whole, the jury would have understood it and applied it in the proper manner. In this we cannot find reversible error.

Instruction No. 16 was erroneous because it addressed the issue of "standard of care" in treating a patient which is not germane or relevant to a cause of action based solely on the doctrine of informed consent. However, there was no evidence in the record which pertained to this issue, and no injury or prejudice has been shown to have occurred from the inclusion of Instruction No. 16. We therefore conclude that the jury instructions, when read together as a whole, adequately and fairly presented the issues and stated the applicable law.

We hold that the trial court did not err in denying appellants' post-trial motions for a new trial or judgment notwithstanding the verdict.

Judgment affirmed. Costs to respondents. No fees awarded on appeal.

BAKES, C.J., concurs.

McDEVITT, J., and WINMILL, District Judge, Pro Tem., concur in the result.

JOHNSON, Justice, dissenting.

I dissent from the Court's opinion. If we were writing on a clean slate concerning the proper interpretation of I.C. § 39–4303, I would agree with the view expressed by the majority. However, in my view, the interpretation of this statute set forth in *Rook v. Trout*, 113 Idaho 652, 747 P.2d 61 (1987) is a permissible interpretation, and this recent decision should not be overruled.

I would reverse and remand for a new trial on the ground that the instructions of the trial court were in error.